PFZ Properties, Incorporate, demandante y recurrente, *v.* General Accident Insurance Company, Puerto Rico, Ltd., demandada y recurrida.

Número: RE-91-174 Resuelto: 7 de septiembre de 1994

882

884

888

*Ilsa Y. Figueroa Arús* y *Juan A. Moldes*, abogados de la parte recurrente; *Ramón E. Bauzá Higuera* y *Rafael Ortiz Carrión*, abogados de la parte recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

## I

### Hechos

En agosto de 1987, PFZ Properties, Inc. (en adelante PFZ) suscribió un contrato de seguros con la compañía demandada recurrida, General Accident Insurance Company, P.R., L.T.D. (en adelante la Aseguradora).[1] PFZ se aseguró por daños ocasionados sin intención a la persona y/o a la propiedad de terceros. Como parte del contrato, la ase-

---

[1] La vigencia de la póliza era de 13 de agosto de 1987 a 13 de agosto de 1988, con cubierta de hasta un millón de dólares ($1,000,000).

guradora se comprometió a ofrecer representación legal a la corporación demandante recurrente en caso de surgir alguna reclamación de tercero por daños ocasionados a éste.(²)

En marzo de 1988, PFZ ordenó la demolición de siete (7) estructuras de concreto localizadas en una finca de su propiedad en Loíza. Dichas estructuras estaban abandonadas y deterioradas y, según el alegato de la demandante recurrente, constituían un estorbo para la corporación, puesto que las mismas eran escenario de actos antisociales, ilícitos e insalubres, y amenazaban con la ruina.

Entre las siete (7) estructuras se destruyeron tres (3) que, si bien no estaban identificadas o demarcadas con verjas o linderos, no pertenecían ni estaban localizadas dentro de los límites de la finca de PFZ. Según PFZ el error fue motivado por la creencia de que dichas estructuras, como las otras, estaban localizadas dentro de su propiedad. Los dueños de dichas tres (3) estructuras reclamaron extrajudicialmente a PFZ por los daños ocasionados por la demolición.

PFZ informó lo acontecido a la compañía aseguradora para que se le ofreciera representación legal ante la eventualidad de un pleito y para que se le extendiera una cubierta bajo la póliza suscrita entre ambas partes. La aseguradora negó tanto la cubierta como la representación legal. Ante esto, PFZ realizó contratos de transacción con los terceros afectados por la demolición de las estructuras

---

(²) La póliza expedida a favor de PFZ estableció las obligaciones siguientes:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after applicable limit of the company's liability has been exhausted by payment judgments or settlements."

con el fin de evitar una demanda.([3]) A su vez, instó una demanda contra la aseguradora, reclamando por el incumplimiento del contrato de la póliza de seguro.

Estimando que los hechos no estaban en controversia y que lo verdaderamente pertinente era determinar el derecho o interpretar las cláusulas del contrato de seguro, PFZ presentó una moción de sentencia sumaria. La aseguradora oportunamente se opuso y luego de una serie de mociones el tribunal de instancia falló a favor de la aseguradora y desestimó la demanda. Determinó que el contrato de seguros, en cuestión, tenía una cláusula de exclusión que disponía del asunto en el caso de autos. Dicha cláusula declaraba:

> This insurance does not apply:
>
> . . . . . . . .
> (K) to property damage to
> (1) property owned or ocuppied by or rented to the insured
> (2) property used by the insured, or
> (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control...

El tribunal estableció que dicha clásula era aplicable, ya que las estructuras demolidas estaban bajo la posesión inmediata y el control exclusivo de PFZ. Concluyó que la parte demandante recurrente demolió las estructuras con intencionalidad, aunque no con malicia, bajo la creencia de que le pertenecían.

Inconforme con la sentencia, PFZ recurre ante nos mediante recurso de revisión. Señala que el tribunal de instancia se equivocó al determinar que: (1) la póliza era de responsabilidad pública;([4]) (2) la cláusula de exclusión era

---

([3]) PFZ pagó a los terceros afectados por la demolición cincuenta y un mil dólares ($51,000), esto es, diecisiete mil dólares ($17,000) por cada estructura.

([4]) Aunque en el escrito de solicitud de revisión PFZ alega que el tribunal se equivocó al determinar que la póliza era una de responsabilidad pública y no una póliza a todo riesgo (*comprehensive general liability insurance*), en el alegato no

clara y libre de ambigüedad y que la misma era aplicable; (3) la corporación PFZ ostentaba el control exclusivo de las propiedades demolidas; (4) no existía un deber de representar al asegurado ante las reclamaciones extrajudiciales al determinar que el incidente no constituyó una ocurrencia (*occurrence*) o siniestro; (5) la demandante recurrente debía pagar las costas del litigio.

Por su parte, la aseguradora plantea que la demolición intencional, pero equivocada, de las tres (3) estructuras no estaba cubierta por la póliza y que no tenía obligación de defender a PFZ cuando no se había iniciado un pleito u otra acción judicial en su contra. Alega que Jack Katz, vicepresidente de PFZ, como ejecutivo a cargo de los actos que originan este caso declaró que las estructuras en controversia ya estaban en la finca para 1966, cuando la visitó por primera vez. Añade que en una deposición el señor Katz admitió que desde que PFZ adquirió la finca efectuó actos de posesión en concepto de dueño sobre las estructuras demolidas sin que nadie opusiera mejor derecho a reclamar algún título sobre éstas; que PFZ se representaba públicamente como dueño de las estructuras, y que nunca tuvo dudas de que eran propiedad de la corporación demandante.

También señala que PFZ impartió instrucciones específicas a los contratistas en cuanto a cuáles eran las siete (7) estructuras que se debían demoler; que PFZ actuó deliberada e intencionalmente porque desde 1972 tenía en su poder un plano de mensura en el que se establecían los puntos de colindancia de la finca de su propiedad. Alega que dicho plano había sido examinado y custodiado por Katz y que, de acuerdo con éste, era obvio que algunas de las estructuras no estaban dentro de las colindancias de la finca. Sugiere que al PFZ haber presentado una demanda

---

discute este supuesto error. Por otra parte, la propia aseguradora se refiere a la póliza como una tipo *comprehensive general liability insurance*. Véase el Alegato de la parte demandada recurrida, pág. 25. Por lo tanto, no vamos a discutir este error ni haremos determinación alguna al respecto.

de accesión contra personas que construyeron dentro de su finca debía haber estudiado la ubicación de todas las estructuras respecto a las colindancias.

Al revisar la sentencia del tribunal de instancia, debemos determinar si la aseguradora debió ofrecer representación legal, y si la póliza cubría, en efecto, la actuación de PFZ.

## II

*Obligación de la compañía aseguradora de proveer representación legal al asegurado.*

■ Es práctica usual que los contratos de seguros incluyan cláusulas para establecer la obligación de la compañía aseguradora de proveer representación legal al asegurado ante reclamos de daños físicos o a la propiedad, producto de siniestros cubiertos por la póliza. Debido a que el propósito de una póliza de seguro es brindar protección al asegurado, el deber de representarlos legalmente es parte esencial de la cubierta que se contrata con la compañía aseguradora. *Pagán Caraballo v. Silva, Ortiz*, 122 D.P.R. 105 (1988).

■ Son dos (2) los propósitos de las cláusulas que establecen dicho deber: obligar al asegurador a asumir la defensa del asegurado ante una reclamación por daños y ofrecerle derechos respecto a los pormenores de dicha defensa. R.E. Keeton y A.I. Widiss, *Insurance Law*, Minnesota, Ed. West Publishing Co., 1988, pág. 989.

■ Las compañías aseguradoras requieren, pues, que el asegurado le informe prontamente sobre aquellos sucesos que puedan levantar reclamos por los daños cubiertos por la póliza de seguro. Keeton y Widiss, *op. cit.*, pág. 990. Una vez la compañía aseguradora ha recibido dicha notificación, está en posición de tomar la acción pertinente para iniciar una investigación; realizar negociaciones dirigidas

a una posible transacción, o iniciar las gestiones necesarias para preparar la defensa del asegurado. Íd.

■ Uno de los propósitos de requerir la notificación temprana de eventos que puedan dar vida a reclamaciones de terceros contra el asegurado es proveer al asegurador la oportunidad de explorar las posibilidades para una transacción. La experiencia ha demostrado que las ofertas de transacción hechas con relativa prontitud de la fecha cuando ocurrió el siniestro u ocurrencia sirven para evitar que se incurra en gastos de defensa y para reducir la suma que el asegurado deberá pagar para afianzar la transacción en el caso de una demanda contra él. Así:

> The advantage to the insured of a settlement (which forecloses the prospect of any liability for an insured) constitutes a compelling argument for the proposition that a liability insurer should be obligated to exercise reasonable care as to whether to take the initiative in approaching potential claimants to explore the possibility of a settlement even before a claim or a tort action is filed. Furthermore, once a claim is made or a lawsuit is filed, essentially the same considerations provide support for the proposition that the insurer should be obligated to exercise reasonable care about pursuing settlement possibilities, rather than awaiting "offers for settlement" from the third party claimant. Moreover, those same interests might even be viewed as justifying —at least in some circumstances— the conclusion that an insurer should pursue the possibility on an agreement with the third party to seek an accord by using some type of structured settlement process or procedure. (Escolios omitidos.) Keeton y Widiss, *op. cit.*, págs. 996–997.

■ Ahora bien, el deber de un asegurador de asumir la representación legal de un asegurado dependerá del grado de probabilidad de que, ante un evento determinado, una persona prudente y razonable tomaría acción para enfrentar posibles reclamaciones por daños producto de dicho evento. Keeton y Widiss, *op. cit.* Se tomará en cuenta la probabilidad de que se presenten reclamaciones por daños; si dichas reclamaciones están dentro del ámbito de la cubierta de la póliza o del más amplio contorno de la obliga-

ción del asegurado de proveer representación legal al asegurado, y las ventajas potenciales que ofrece una preparación oportuna y a tiempo para enfrentar reclamos futuros. Íd.

Los tribunales constantemente han interpretado que la obligación de ofrecer representación legal al asegurado es aun más extensa que la obligación de indemnizar por daños en la medida en que éstos estén cubiertos por una póliza de seguros. *Pagán Caraballo v. Silva, Ortiz*, supra, págs. 111–113. *Vega v. Pepsi-Cola Bot. Co.*, 118 D.P.R. 661, 668 (1987). El deber de la compañía aseguradora de proveer representación legal existe, en algunas circunstancias, aun cuando la aseguradora no esté obligada a indemnizar los daños causados por el asegurado a un tercero. Keeton y Widiss, *op. cit.*, pág. 991; 7C *Appleman Insurance Law and Practice* Sec. 4683.01 (1979); 14 *Couch on Cyclopedia of Insurance Law 2d* Sec.51:92 (1984); *Pagán Caraballo v. Silva Ortiz*, supra, págs. 111–112; *Vega v. Pepsi-Cola Bot. Co.*, supra, págs. 665–667. Cualquier duda sobre si existe el deber de asumir la defensa en un caso en particular tendrá que ser resuelta a favor del asegurado. Íd. Este tipo de obligación subsiste aunque la acción sea infundada, falsa o fraudulenta. *Pagán Caraballo v. Silva, Ortiz*, supra, págs. 111–113; *Vega v. Pepsi-Cola Bot. Co.*, supra, pág. 665; *Fernández v. Royal Indemnity Co.*, 87 D.P.R. 859, 863 (1963).

Si se reconoce el deber de proveer asistencia legal, éste puede surgir antes de que se presente una demanda por un tercero, incluso: (1) cuando se le informa al asegurador de un siniestro u ocurrencia (*occurrence*); (2) cuando se recibe el reclamo del asegurado aunque no se ha presentado ninguna acción legal, o (3) cuando un tercero reclama por daños sufridos sin haber presentado aún una demanda, incluyendo, en algunas circunstancias, reclamos que parecen estar fuera del ámbito de la cubierta pero que caen dentro del más amplio alcance de la responsabilidad

de la compañía aseguradora respecto a la defensa del asegurado. Keeton y Widiss, *op. cit.*, págs. 991–992.

■ El rechazo al deber de defender puede configurarse antes de iniciarse el litigio. *Mun. of San Juan v. Great Ame. Ins. Co.*, 117 D.P.R. 632, 635–636 (1986). Mas para que la aseguradora rechace su responsabilidad con la defensa del asegurado, no es suficiente esgrimir que el daño reclamado no esté dentro de los contornos de la cubierta de la póliza. A pesar de que el deber de la compañía aseguradora es defender al asegurado por acciones que están dentro de los términos de la póliza, "tal deber se mide, en primer término, por las alegaciones del demandante y si dichas alegaciones establecen hechos que colocan el daño dentro de la cubierta de la póliza, el asegurador tiene que defender irrespectivamente de la responsabilidad que en última instancia tenga el asegurado para con el demandante". *Fernández v. Royal Indemnity Co.*, supra, pág. 863; *Vega v. Pepsi-Cola Bot. Co.*, supra, pág. 665.

■ La obligación de la compañía aseguradora de asumir la representación legal surgirá cuando de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado está protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso. No obstante, si las alegaciones claramente excluyen de la cubierta de la póliza los daños reclamados, no podrá imponerse a la aseguradora el deber de defender. *Vega v. Pepsi-Cola Bot. Co.*, supra, pág. 668; *Fernández v. Royal Indemnity Co.*, supra, pág. 864.

■ El hecho de que la demanda contenga alegaciones ambiguas o incompatibles no releva a la aseguradora de su deber de defender, el cual subsiste en casos en que las alegaciones no sean perfectas. Si la demanda tiene alegaciones que están dentro de la cubierta de la póliza, así como otras que no necesariamente lo están, la compañía de seguros deberá asumir la defensa del asegurado, aun sobre

aquellas reclamaciones que no estén cubiertas. *Pagán Caraballo v. Silva, Ortiz,* supra, págs. 111–112.

■ Cuando un asegurador incumple su deber contractual de asumir la representación legal al asegurado, éste podrá demandarlo por incumplimiento de contrato. Keeton y Widiss, *op. cit.,* pág. 1043. Si esto ocurre, el tribunal determinará si la acción de la compañía aseguradora estuvo justificada, tomando en cuenta si los daños reclamados al asegurado estaban dentro del alcance de la cubierta de la póliza; si los reclamos contra el asegurado eran infundados, falsos y fraudulentos, y si aun así el asegurador estaba obligado a brindarle representación legal. En caso de que el asegurador no tenga obligación de ofrecer cubierta por los daños ocasionados a un tercero, el asegurado tiene derecho a recibir indemnización por los gastos legales porque la responsabilidad de proveer representación legal es más extensa que la cubierta de la póliza. Íd.

■ En cuanto a la concesión del remedio que tiene un asegurado cuando su compañía aseguradora infringe el deber contractual de ofrecer representación legal, hemos manifestado que procederá la imposición de las costas del litigio, así como los honorarios. *Pagán Caraballo v. Silva, Ortiz,* supra, pág. 113; *Vega v. Pepsi-Cola Bot. Co.,* supra; *Mun. of San Juan v. Great Ame. Ins. Co.,* supra. Además, en la mayoría de los casos el asegurado tendrá derecho a recobrar la suma pagada al tercero, al que causó daños, claro está dentro de los límites de la cubierta de la póliza. Keeton y Widiss, *op. cit.,* pág. 1045.

■ Respecto a las opiniones que hemos emitido en el pasado sobre el deber de la compañía aseguradora de ofrecer representación legal al asegurado, nuestras determinaciones se han hecho caso a caso, examinando las alegaciones o reclamaciones del asegurado (o de los que la demanden por daños), y comparándolas con las cláusulas

del contrato de seguro del caso en particular. Véanse: *Pagán Caraballo v. Silva, Ortiz,* supra; *Vega v. Pepsi-Cola Bot. Co.,* supra; *Morales Garay v. Roldán Coss,* 110 D.P.R. 701 (1981); *Boston Old Col. Ins. v. Tribunal Superior,* 104 D.P.R. 517 (1975); *Fernández v. Royal Indemnity Co.,* supra.

En el caso de autos la aseguradora alega que no incumplió su obligación de ofrecer representación legal a su asegurada, PFZ, porque los eventos que dieron vida a las reclamaciones de terceros no estaban incluidos en la póliza. Además, señala que no tenía que brindar representación legal a PFZ porque no se presentó un pleito o acción legal contra la demandante recurrente; que sólo cuando se ha entablado un pleito, y no antes, el asegurador tiene el deber de defender al asegurado. No le asiste la razón.

■ En primer término, como ya expusimos, el deber de ofrecer representación legal es más amplio que los contornos de la cubierta de la póliza. Cualquier duda sobre si existe el deber de ofrecer representación legal tiene que ser resuelta a favor del asegurado, incluyendo los casos en que los reclamos inicialmente parezcan estar fuera del ámbito de la cubierta pero que caen dentro del más amplio alcance de responsabilidad de la aseguradora respecto a la defensa del asegurado. En este caso la póliza fue adquirida para proteger al asegurado de reclamaciones por daños a la propiedad de terceros. Las excepciones a la cubierta, por la particularidad de los hechos y las circunstancias que dieron lugar a los daños no eran claramente aplicables.

En el caso de autos la parte demandante recurrente, tan pronto tuvo conocimiento de los daños ocasionados a terceros, se comunicó con su compañía aseguradora, primero mediante una llamada telefónica y luego por escrito. Informó que los dueños de las propiedades demolidas se habían comunicado con ejecutivos de PFZ, que habían reclamado daños y que estaban en actitud de resolver el asunto

de manera amigable.([5]) Cumplió así con la obligación de notificar a su asegurado sobre eventos que podrían ser, y fueron, fuente de reclamos de terceros por daños a la propiedad.

Por su parte, la Aseguradora informó a su asegurado que luego de una investigación realizada por la compañía aseguradora habían concluido que por las circunstancias que dieron lugar a los daños alegados, éstos no estaban dentro de la definición de ocurrencia según los términos de la póliza. Sin embargo, en ese momento la cuestión crucial no era si finalmente la aseguradora tendría que ofrecer cubierta a PFZ por los daños reclamados por los terceros perjudicados, sino si ésta debía representar a PFZ para realizar transacciones amistosas, oportunas y menos costosas que evitaran un complicado e innecesario litigio.

En segundo término, no necesariamente tiene que existir una demanda para que surja el deber de ofrecer representación legal al asegurado. En nuestra jurisdicción los litigios no son favorecidos. R. Hernández Colón, *Manual de Derecho Procesal Civil*, 2da ed. rev., San Juan, Ed. Equity, 1981, pág. 284. Existe un genuino interés en mantener la paz entre los ciudadanos, lo que requiere una pronta resolución de las controversias. Por lo tanto, se aboga por la transacción amistosa de las diferencias entre las personas. *Martínez v. Cintrón*, 60 D.P.R. 563, 566 (1942). Las transacciones son un mecanismo reconocido legalmente para evitar la provocación de un pleito. Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821.([6]) Por lo

---

([5]) En una carta de 8 de junio de 1988, el señor Katz advierte: "We would not want any delay in settling this claim result in the claimant seeking legal redress which probably would result in a disproportionate award being in the claimant's favor in a court of law."

([6]) Las Reglas de Procedimiento Civil favorecen las transacciones al castigar la temeridad de los litigantes. Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Velázquez Ortiz v. U.P.R.*, 128 D.P.R. 234 (1991); *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724 (1990); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718–719 (1987); *Soto v. Lugo*, 76 D.P.R. 444 (1954); *McCormick v. Vallés*, 55 D.P.R. 226, 233 (1939).

tanto, y aunque la Regla 2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, indica que un pleito se inicia con la presentación de una demanda, con relación a un contrato de seguros, no podemos condicionar el deber de ofrecer representación legal al hecho de que se haya instado una acción judicial. La interpretación liberal de este deber debe permitir la adjudicación de las controversias en forma tal que se propicie una solución rápida y económica. *Lugo Ortiz v. Ferrer*, 85 D.P.R. 862, 867 (1962).

Además, el contrato ante nos provee específicamente que la compañía aseguradora " 'may make such investigation and settlement of any *claim or suit* as it deems expedient' ".([7]) (Énfasis en el original.) Keeton y Widiss, *op. cit.*, pág. 992. *Claim* significa "demanda, reclamación, afirmación, declaración". E.B. Williams, *The Spanish and English Dictionary*, Nueva York, Ed. Charles Scribner's Sons,

---

Las Reglas de Evidencia también promueven las transacciones amistosas como cuestión de política pública. Por ejemplo, véase la Regla 22(B) de Evidencia, 32 L.P.R.A. Ap. IV.

([7]) Al respecto Keeton expresa:

"The view advanced here in support of a duty to prepare for a defense is somewhat at odds with terms used in most liability insurance policy forms, which typically declare that the insurer *'may* make such *investigation*, negotiation and *settlement* of any decision or suit as it deems expedient'. The word 'may' in this provision should not confer upon the insurer complete discretion —that is, it should not 'insulate' an insurer from liability for failure to take preparatory steps before an insured is sued. This conclusion is fortified by the doctrines and approaches which now clearly apply to an insurer's actions regarding the settlement obligation which, of course, is addressed in precisely the same clause. The numerous judicial precedents— which impose liability for consequential damages when an insurer decides not to accept an offer to settle a third party's claim even though a clause in the insurance policy states that the insurer 'may make such * * * settlement * * * as it deems expedient'— provide substantial support for the recognition of a duty for the insurer to make reasonable and good faith judgments about whether to engage in preparations for a defense by initiating an investigation or by undertaking other activities that would be prudent in such circumstances.

"Cases will almost certainly arise in which it will be impossible for an insurer to fulfill its duty of defense, should a trial occur, as well as it would have been able to do had the insurer undertaken advance preparations before the existence of that duty was unquestionably 'triggered' by the filing of a law suit against the insured. The extraordinary difficulty of attempting to ascertain the consequences of inaction by an insurer in a particular case also provides substantial justification for obligating liability insurers to take reasonable steps in preparation for defense whenever there are circumstances that indicate there is a significant possibility that a claim will be made by a third party." (Énfasis en el original y escolios omitidos.) R.E. Keeton y A.I. Widiss, *Insurance Law*, Minnesota, Ed. West Publishing Co., 1988, pág. 992.

1963, pág. 94. Es un "crédito o acreencia. Derecho a un pago aunque sea mediato, condicionado o litigioso. Pretensión. Reclamo. Acción. Demanda. Juicio". G.C. Cabanellas y E.C. Hoague, *Butterworths English-Spanish Legal Dictionary*, Texas, Ed. Butterworth, 1991, pág. 109. Reclamación, a su vez, significa: "[p]rotesta ante el desconocimiento del derecho propio. Exigencia de una obligación ajena incumplida, desvirtuada o retrasada. Queja. Contradicción escrita o verbal de lo considerado injusto." G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 20ma ed. rev., Buenos Aires, Ed. Heliasta, T. VII, 1981, pág. 38. No se limita a una reclamación judicial.

■ No estamos diciendo que ante cualquier reclamación extrajudicial de un tercero a un asegurado una compañía de seguros deba ofrecer representación legal. Pero para negar dicha reclamación debe surgir, con meridiana claridad, que la misma está fuera del ámbito de la cubierta de la póliza. En el caso de autos, la póliza fue adquirida para proteger al asegurado de reclamaciones por daños a la propiedad de terceros. Las excepciones a la cubierta, por la particularidad de los hechos y las circunstancias que dieron lugar a los daños, no eran claramente aplicables. Por lo tanto, erró el tribunal al determinar que la aseguradora no tenía el deber de ofrecer representación legal a su asegurada PFZ.

### III

*Interpretación de los contratos de seguros*

■ En nuestra jurisdicción el negocio de seguros está investido de substancial interés público y, por lo tanto, ha sido reglamentado por el Estado. Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957 (26 L.P.R.A. sec. 101 *et seq.); San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. 405 (1993); *Comisionado de Seguros v. Anglo*

*Porto Rican*, 97 D.P.R. 637, 640 (1969); *Maryland Casualty Co. v. San Juan Racing Assoc., Inc.*, 83 D.P.R. 559, 563 (1961).

La Asamblea Legislativa determinó que la interpretación de los contratos de seguros se hacía "globalmente, a base del conjunto de sus términos y condiciones, según se expresa en la póliza". Art. 11.250 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1125. Al acoger el mandato legislativo sobre la interpretación de los contratos de seguros, añadimos que por ser estos contratos de adhesión, en caso de obscuridad, las cláusulas de dichos contratos deberán ser interpretadas en la forma menos favorable al asegurador. *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91, 93 (1974); *Rosario v. Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759, 765 (1968); *Pérez Escolar v. Collado*, 90 D.P.R. 806, 811 (1964); *Barreras v. Santana*, 87 D.P.R. 227, 231 (1963).

Como el propósito del contrato de seguros es la indemnización y la protección en caso de producirse un suceso incierto previsto en el mismo, Art. 11.250 del Código de Seguros de Puerto Rico, *supra*, específicamente señalamos que las cláusulas de exclusión serán interpretadas restrictivamente; las dudas serán resueltas de modo que se cumpla con el propósito de la póliza. *Casanova v. P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1978); *Ferrer v. Lebrón García*, 103 D.P.R. 600, 603 (1975); *León Ortiz v. Comisión Industrial*, 101 D.P.R. 781 (1973); *Torres Trumbull v. Pesquera*, 97 D.P.R. 338 (1969); *The London Assurance v. Tribunal Superior*, 95 D.P.R. 305 (1967); *Rosario v. Atl. Southern Ins. Co. of P.R.*, supra, pág. 765; *Pérez Escolar v. Collado*, supra, pág. 811; *Barreras v. Santana*, supra, págs. 232–233; *Maryland Cas'y Co. v. San Juan Rac'g Assoc., Inc.*, supra, págs. 565–566. Se buscará el sentido o significado que a las palabras de la póliza le daría una persona normal de inteligencia promedio. *Barreras v. Santana*, supra, pág. 235. El asegurado tiene derecho a confiar en la cubierta que se le ofrece leyendo las cláusulas del contrato

a la luz del sentido popular de sus palabras. *Pagán Caraballo v. Silva, Ortiz,* supra, pág. 110; *Morales Garay v. Roldán Coss,* supra, pág. 706.

 Por otra parte, al resolver pleitos de seguros, los cuales usualmente requieren se interpreten las cláusulas de la póliza, hemos utilizado normas del Derecho angloamericano y del Derecho Civil. *Mun. of San Juan v. Great Ame. Ins. Co.,* supra, págs. 635–636; *Casanova v. P.R.-Amer. Ins. Co.,* supra, pág. 693.

Tras esbozar el análisis requerido para interpretar y resolver los conflictos surgidos en el negocio de los seguros, examinamos las controversias sobre la cubierta de la póliza en el caso de autos.

## IV

*Cubierta por daños a la persona o a la propiedad en caso de siniestro u ocurrencia*

El contrato de seguros suscrito por PFZ y la aseguradora establece que esta última deberá responder por toda suma que la asegurada venga obligada a pagar por concepto de daños a la propiedad causados por un siniestro y ocurrencia (*ocurrence*) siempre que los daños a indemnizar estén dentro de los contornos de la cubierta ofrecida por la póliza.

La póliza define *ocurrencia* (*occurrence*) como "an accident, including continuos or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the stand point of view of the insured". Esta definición es común en las pólizas de seguro contemporáneas. *Couch,* supra, Sec. 44.285, pág. 437; *Saavedra v. Joyerías Gordons, Inc.,* 120 D.P.R. 360, 363 (1988); *Morales Garay v. Roldán Coss,* supra.

 Dentro del campo especializado del derecho de

seguros el término *siniestro u ocurrencia (occurrence)* significa:

> ...la manifestación concreta del riesgo asegurado, que produce unos daños garantizados en la póliza hasta determinada cuantía. Siniestro es el incendio que origina la destrucción total o parcial de un edificio asegurado; el accidente de circulación del que resultan lesiones personales o daños materiales; el naufragio en el que se pierde un buque o las mercancías transportadas; el granizo que destruye una plantación agrícola, etc. Siniestro es, pues, un acontecimiento que, por originar unos daños concretos previstos en la póliza, motiva la aparición del principio indemnizatorio, obligando a la entidad aseguradora a satisfacer, total o parcialmente, al asegurado o a sus beneficiarios, el capital garantizado por el contrato. J. Castelo Matrán, *Diccionario MAPFRE de Seguros*, Madrid, Ed. MAPFRE, 1988, pág. 280.

Si una cláusula de un contrato de seguros está redactada en términos de la ocurrencia de un siniestro (*ocurrence*), su cubierta será más amplia que la provista por aquellas pólizas que se redacten de tal manera que se compensen daños causados por accidentes. 11 *Couch*, supra, Sec. 44.285, pág. 437; *Albany Ins. Co. v. Cía. Des. Comercial P.R.*, 125 D.P.R. 421 (1990). Aún así, el concepto *ocurrencia (occurrence)* no provee cubierta por actos culposos e intencionales del propio asegurado. 11 *Couch*, supra, Sec. 44.285, pág. 437; Keeton y Widiss, *op. cit.*, págs. 493–494, 518–519. Los actos negligentes del asegurado sí pueden ser cubiertos por la póliza. 11 *Couch*, supra, Sec. 44.267, págs. 414–415; Sec. 44.275, pág. 426; *Appleman*, supra, Sec. 3114, pág. 399. Mas existe controversia sobre si las pólizas de seguro contemporáneas deben responder por los daños ocasionados por el asegurado cuando las consecuencias producto de las acciones intencionales no eran deseadas. Keeton y Widiss, *op. cit.*, pág. 520.

Existen diversos enfoques para determinar si una póliza de seguro debe proveer cubierta bajo dichas circunstancias. Éstos son: (1) analizar si el propósito o intención del asegurado fue causar daño; (2) determinar si el

asegurado deseaba que su actuación causara el tipo de daño que efectivamente causó; (3) determinar si el daño ocasionado fue la consecuencia normal y probable de los actos del asegurado; (4) entender que la frase, "daños físicos o daños a la propiedad no *anticipados* ni intencionales", desde el punto de vista del asegurado, significa que el resultado es sustancialmente una consecuencia cierta de la acción de éste. Keeton y Widiss, *op. cit.*, págs. 519–524.

Otros tratadistas aseguran que lo importante es el resultado inesperado del acto realizado por el asegurado.

[T]he payment of premium for liability insurance policies becomes pointless if all damages that result from an intentional act are excluded from coverage. Most individuals can protect themselves from causing intentional harm. It is the unexpected result that is cause for concern and the reason for seeking protection through liability insurance. Those policies that protect against liability arising out of a particular activity avoid most of all the problems involved in this section because they focus on the results of one's conduct. 7A *Appleman*, supra, Sec. 4492.01, pág. 21.

 Por otra parte, la presunción de que una persona desea las consecuencias de sus actos voluntarios, y que sea utilizada para determinar la responsabilidad de las consecuencias de un acto voluntario de un asegurado, no es aplicable a la interpretación de los términos en una póliza de seguro. La palabra *intencional*, para propósitos de la aplicación de cláusulas de exclusión de las pólizas de seguro, significa que una persona desea las consecuencias de su conducta o cree que dichas consecuencias son resultado substancialmente evidente de dicha conducta. Un acto realizado con conocimiento de los hechos o resultados substancialmente probables no es inesperado o fortuito y, por lo tanto, no es un accidente. *Appleman,* supra, Sec. 4492.02, pág. 29. Sin embargo, si los daños causados por actos intencionales no fueron deseados o esperados, éstos son consecuencias accidentales dentro de los confines de una póliza de seguro. Íd., pág. 32. Bajo este enfoque, el

término *accidente* no excluye los actos negligentes que podrían ser reconocidos como una ocurrencia o un siniestro. Íd., Sec. 4492.03, pág. 38.

 Por otra parte, algunos comentaristas entienden que aunque las consecuencias dañinas no fueron deseadas, si la conducta del asegurado fue crasamente descuidada, la póliza no proveería cubierta. Keeton y Widiss, *op. cit.*, págs. 539–541. Para que una actuación sea clasificada como negligente, los daños resultantes de ésta deben ser algo que un hombre razonable pueda prever, y que tales daños son consecuencia probable del acto negligente. *Díaz v. E.L.A.*, 118 D.P.R. 395 (1987); *Torres Trumbull v. Pesquera*, supra; *Rivera v. Pueblo*, 76 D.P.R. 404 (1954).

En el caso de autos, PFZ tenía la intención de demoler las estructuras abandonadas que se encontraban dentro de sus predios porque entendía que eran suyas. Sin embargo, insiste en que *no tenía la intención* de destruir estructuras que no le pertenecían. Alega que el propósito de adquirir la póliza de seguro era tener protección en la eventualidad de producir un daño a tercero por caso fortuito o negligencia y que, por lo tanto, la cubierta incluía protección por daños no esperados ni deseados, productos de un error. Además enfatiza que el único propósito que perseguía al demoler las estructuras abandonadas era evitar que su posible derrumbe y uso por terceros causara daños futuros por los que tuviera que responder.

Por su parte, la aseguradora plantea que PFZ demolió las estructuras de manera consciente y deliberada, no accidental ni negligentemente. Como evidencia a este planteamiento señala que (1) el vicepresidente de PFZ, Sr. Jack Katz, tenía en su poder un plano de mensura en el que se establecen los puntos de colindancia de la finca de su propiedad desde 1972, los cuales no habían variado al momento en que se demolieron las estructuras; (2) la primera persona que se había contratado para demoler dichas estructuras renunció aludiendo que la demolición traería

problemas con los verdaderos dueños de las edificaciones (sin embargo, del expediente sólo surge que ésta no prosiguió con los trabajos *por no querer problemas con el vecindario*); (3) la parte demandante recurrente tenía pleno conocimiento de que las estructuras no eran suyas (esto, no obstante, es contrario a las alegaciones que hizo para sostener que las estructuras estaban en posesión de PFZ). Insiste en que, aun cuando acogiéramos el planteamiento de que la actuación de PFZ fue negligente, no procedería su reclamo porque fue una "conducta absurda o completamente insensata".

El tribunal de instancia concluyó que el señor Katz no consultó el plano antes de ordenar las demoliciones; que confió en las aseveraciones de su mayordomo en el sentido de que las siete (7) estructuras estaban ubicadas dentro de su propiedad; que PFZ estuvo en posesión de las estructuras demolidas por casi treinta (30) años; que en el ejercicio de derechos que *creía tener* ordenó la demolición para evitar responsabilidad por daños, y que PFZ demolió intencional aunque no maliciosamente las estructuras.

Resolvemos que erró el foro de instancia al interpretar que la conducta antes descrita no está cobijada bajo los términos de la póliza de seguros. La conducta del asegurado en este caso constituye una consecuencia accidental de un acto intencional que cae bajo la cubierta de la póliza. Se deseaba evitar un daño previsible por el abandono de las estructuras. Su conducta fue producto de una equivocación honesta que causó daños no deseados.

Por lo tanto, siempre y cuando, la cláusula de exclusión de propiedad bajo la posesión, cuidado o control del asegurado no sea de aplicación al caso de autos, concluimos que la aseguradora, aquí demandada recurrida, debió proveer cubierta a PFZ.

# V

*Claúsula de exclusión de responsabilidad por propiedad bajo el cuidado, custodia, control o posesión del asegurado*

█ Comúnmente las pólizas de seguro contra daños a la persona o a la propiedad incluyen cláusulas para excluir de la cubierta de la póliza daños a la propiedad del asegurado o a la propiedad ocupada o rentada por éste, así como aquella bajo su cuidado, custodia o control. Éstas son conocidas en la industria del seguro como *owned property* y *care, custody or control exclusions*.

Este tipo de cláusulas pretende vencer el riesgo de que un asegurado tenga menos incentivos para tomar precauciones para corregir o eliminar condiciones peligrosas que afecten su propiedad. Véase R.J. Franco y D.J. Kindwald, *The Owned Property and Care, Custody and Control Exclusions as Defenses to Environmental Claims*, 42 Fed'n Ins. & Corp. Couns. Q. 23, 24 y 32 (1991). También se pretende evitar que un asegurado que se sienta responsable moralmente por daños ocasionados a un tercero, cuya propiedad le fue encargada al primero, utilice a la compañía aseguradora para indemnizar sus errores.[8]

Aunque dichas exclusiones no reducen la cubierta ofrecida por la póliza, sí la limitan a la indemnización por daños a la propiedad de terceros. El propósito de la póliza es proteger al asegurado ante reclamaciones de terceras personas. E.I. Annis, *The Owned Property and Care Custody and Control Exclusions of the Comprehensive General Liability Policy*, 28 Gonz. L. Rev. 439 (1993). El asegurador no tiene que proveer cubierta cuando el asegurado ejerce algún tipo de control sobre la propiedad, evitando que este último presente reclamos exagerados o falsos o que el asegurador se convierta en garantizador de los trabajos y

---

[8] Véanse, por ejemplo: *Ferguson v. Birmingham Fire Insurance Company*, 460 P.2d 342, 345 (Ore. 1969).

obras de las operaciones ordinarias. 7A *Appleman*, supra, Sec. 4493.03, págs. 84–85.

Sobre la ambigüedad o claridad de las cláusulas de exclusión de cubierta de propiedad bajo el cuidado, custodia y control del asegurado existen diversos enfoques jurídicos. Unos tribunales las consideran claras y libres de ambigüedades y, por lo tanto, opinan que deben ser interpretadas según el significado ordinario de los términos utilizados en ellas. 12 *Couch*, supra, Sec. 44A:14, pág. 19.[9] Otros concluyen que dichas cláusulas son meramente ambiguas y que deben ser interpretadas a favor del asegurador. Algunos tribunales las interpretan con sentido común y con un enfoque práctico basado en los hechos evidenciarios y las circunstancias de cada caso. Appleman, *supra*, Sec. 4493.03, pág. 84.[10] Por otra parte, otros tribunales consideran que la determinación importante no es si son claras o ambiguas, sino el análisis de las expectativas objetivas que pudiera tener una persona razonable sobre la cubierta de la póliza.[11] También se ha dicho que el análisis de este tipo de exclusión no puede hacerse en el abstracto sino a la luz de las razones o propósitos de la cláusula.[12]

De otra parte, para determinar si la propiedad dañada

---

[9] *Ins. Co. of North America v. Adkisson*, 459 N.E.2d 310 (1984); *Dubay v. TransAmerica Ins. Co.*, 429 N.Y.S. 2d 449 (1980); *Mid-Continent Cas. Co. v. Peerless Boiler & Eng. Co.*, 398 P.2d 79 (Okla. 1964); *International Derrick & Equipment Co. v. Buxbaum*, 240 F.2d 536 (3er Cir. 1957); *Torrington Co. v. Aetna Cas. & Sur. Co.*, 216 S.E.2d 547 (1975); *Hill v. United States Fidelity Guaranty Co.*, 367 P.2d 149 (1961); *Madden v. Vitamilk Dairy, Inc.*, 367 P.2d 127 (Wash. 1961); *B.A. Green Construction Company, Inc. v. Liberty Mutual Ins. Co.*, 517 P.2d 563 (Kansas 1973).

[10] *Eisenbarth v. Hartford Fire Ins. Co.*, 840 P.2d 945 (Wyo. 1992); *Employers M.L. Ins. Co. of Wis. v. Puryear Wood P.R. Co.*, 447 S.W. 2d 139 (1969); *Buchanan v. Employers Mut. Liability Ins. Co. of Wis.*, 443 P.2d 681 (Kansas 1968); *Arrigo's Fleet Service, Inc. v. Aetna Life & Cas. Co.*, 221 N.W.2d 206 (1974); *Northwestern Nat. Ins. Co. v. Pennignton, Inc.*, 222 N.W.2d 36 (1974); *Bigelow-Liptak Corp. v. Continental Ins. Co.*, 417 F. Supp. 1276 (D. Mich. 1976); *Boswell v. Travelers Indemnity Company*, 120 A.2d 250 (1956); *Elcar Mobile Homes Inc. v. D.K. Baxter, Inc.*, 169 A.2d 509 (1961); *Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114 (1978); *River Services Co. v. Hartford Acc. & Indem. Co.*, 449 F. Supp. 622 (N.D. Ohio 1977).

[11] *Estrin v. Const. Co., Inc. v. Aetna Cas. & Sur.*, 612 S.W. 2d 413 (1981); *Patrick v. Head of the Lakes Coop. Elec. Ass'n*, 295 N.W.2d 205 (1980); *United States Fire Insurance Co. v. Schnabel*, 504 P.2d 847 (Alaska 1972).

[12] *Ferguson v. Birmigham Fire Insurance Co.*, supra.

está en posesión, cuidado, custodia o control del asegurado se requiere indagar sobre los propósitos por los cuales se ejerce dicho control o posesión física. *Couch*, supra, Sec. 44:15, pág. 206. Además, este tipo de exclusión se refiere al control físico o a la posesión de la propiedad y no necesariamente al control o título propietario en sí.[13] De acuerdo con la aplicación restrictiva de las cláusulas de exclusión, se requiere que el cuidado, control o custodia haya sido autorizado por el dueño o por otra persona que tenga control legal sobre la propiedad. *Appleman*, supra, Sec. 4493.03, pág. 88; *Couch*, supra, Sec. 44A:66, pág. 28. La determinación sobre si la cláusula es o no aplicable es una cuestión de hecho que ha de ser determinada por los tribunales. *Appleman*, supra, Sec. 4493.03, pág. 82. El peso de la prueba sobre la aplicabilidad de la excepción es del asegurador. *Couch*, supra, Sec. 44A:3, pág. 7.[14] Al hacer dicha determinación se tiene que tomar en cuenta la naturaleza de la propiedad, su localización y tamaño, la actividad que realizaba el asegurado en dicha propiedad, el interés y el deber de éste sobre la misma, así como el interés de otros. *Appleman*, supra, Sec. 4493.03, pág. 82. Franco y Kindwald, *The Owned Property and Care, Custody and Control Exclusions*, supra, pág. 31.[15]

▮ Concluimos, pues, que a tono con la interpretación liberal a favor del asegurado, así como con la interpretación restrictiva de las cláusulas de exclusión, las cláusulas sobre propiedad bajo el cuidado, la custodia y el control del asegurado *serán examinadas tomando en cuenta los he-*

---

[13] Véase, por ejemplo, *U.S. Fid. & Guar. Co. v. Johnson Shoes*, 461 A.2d 85, 88 (1983) ("Whether the property damage comes within this exclusion depends upon the sufficency of the evidence that, at the time the property was damaged, it was in the possesory, and not merely propietory control.").

[14] Véanse, también: *L.A. Maintenance v. Certain Underwriters*, 616 So. 2d 1250 (1993); *Capital Bank & Trust v. Equitable Life Assurance*, 542 So. 2d 494 (1989).

[15] Véanse: *Magnetic Data Inc. v. St. Paul Fire & Marine Insurance Co.*, 430 N.W.2d 483 (1988); *Ohio Cas. Ins. Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450, 453 (1977).

*chos y las circunstancias del caso en particular, el propósito
de la cláusula, así como las expectativas y los fines del asé-
gurado al adquirir la póliza.*([16])

En el caso de autos, el tribunal de instancia desestimó
la demanda mediante el mecanismo procesal de sentencia
sumaria bajo la premisa de que no existía controversia al-
guna sobre el hecho de la posesión inmediata y el control
exclusivo de las estructuras demolidas. Tras estudiar las
mociones de PFZ para que se dictase sentencia sumaria y
las mociones en oposición presentadas por la compañía
aseguradora, el tribunal de instancia determinó que la
cláusula de exclusión era de aplicación. Erró al así hacerlo.
La prueba documental presentada por ambas partes era
insuficiente y presentaba una controversia material que
debía dirimirse en un juicio en los méritos. Veamos.

La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A.
Ap. III, establece, en lo pertinente, que se podrá dictar sen-
tencia sumaria "si las alegaciones, [deposiciones], contes-
taciones a interrogatorios y admisiones ofrecidas, en unión
a las declaraciones juradas, si las hubiere, demostraren
que no hay controversia real sustancial en cuanto a ningún
hecho material y que como cuestión de derecho debe dic-
tarse sentencia sumaria .... Dicha sentencia podrá dictarse
a favor o en contra de cualquier parte en el pleito".([17])

El mecanismo procesal de sentencia sumaria
es un *remedio discrecional extraordinario* que únicamente
se concederá cuando la evidencia que se presente con la
moción establezca con claridad la existencia de un derecho.
Solamente debe ser dictada una sentencia sumaria "en ca-
sos claros, cuando el Tribunal tenga ante sí la verdad sobre

---

([16]) Aunque existen múltiples decisiones estatales y federales sobre las cláusu-
las de exclusión sobre propiedad bajo la posesión, el cuidado, la custodia y el control
del asegurado, la mayoría se refieren a situaciones en las cuales un contratista que
trabaja en la propiedad de un tercero causa daños a dicha propiedad. Estos casos son
distinguibles del caso de autos. Véanse, por ejemplo, los casos citados.

([17]) En el caso de autos el tribunal denegó la moción de sentencia sumaria
solicitada por la demandante, PFZ, y, a su vez, desestimó la demanda.

todos los hechos pertinentes". *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720–721 (1986). Véanse: *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716 (1994); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990). Mediante dicho mecanismo procesal se pretende obtener un remedio rápido y eficaz en casos en que queda demostrado que no existe una controversia sobre hechos materiales del litigio. *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363 (1994); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83 (1987).

Anteriormente hemos señalado que el fin de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias de hecho, sino que lo que resta es aplicar el derecho. *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993); *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 720; *Cuadrado Lugo v. Santiago Rodríguez*, supra, pág. 279. Mas, el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. *Cuadrado Lugo v. Santiago Rodríguez*, supra. Al dictar sentencia sumaria no se puede poner en peligro o lesionar los intereses de las partes. *Philip Morris, Inc. v. Tribunal Superior*, 103 D.P.R. 207, 216 (1975). Por eso, si existen dudas sobre la existencia de una controversia de hechos, éstas deben resolverse contra la parte que solicita la sentencia sumaria presentada. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 720. *Cuadrado Lugo v. Santiago Rodríguez*, supra. El procedimiento sumario no permite que el tribunal dirima cuestiones de credibilidad. *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735 (1992).

Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas

y documentos que pongan en controversia los hechos presentados por el promovente. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 721. Sin embargo, el solo hecho de no presentar evidencia que contravierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria. *Rivera et al. v. Superior Pkg., Inc. et al.*, supra; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991); *Cuadrado Lugo v. Santiago Rodríguez*, supra; *Corp. Presiding Bishop CJS of LDS v. Purcell*, supra, pág. 721; *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983).

Al considerar una moción de sentencia sumaria, el tribunal presumirá ciertos los hechos no controvertidos que se hacen constar en los documentos y en las declaraciones juradas admisibles que se acompañan con la moción. *Corp. Presiding Bishop CJS of LDS v. Purcell*, supra, pág. 721. "[Las D]eclaraciones juradas que contienen sólo conclusiones, sin hechos específicos que las apoyen, no tiene valor probatorio, siendo, por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye." Íd., pág. 722. Véase Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del Tribunal (*Medina v. M. S. & D. Química P.R., Inc.*, supra, págs. 722–723); (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no deberá dictar sentencia sumaria cuando (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como

cuestión de derecho no proceda (*Corp. Presiding Bishop CJS of LDS v. Purcell*, supra, págs. 722–723; *Cuadrado Lugo v. Santiago Rodríguez*, supra, pág. 280). Aunque el tribunal dictará sentencia sumaria a su discreción, como regla general, no es aconsejable resolver sumariamente casos complejos o que envuelvan cuestiones de interés público. *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993); *Corp. Presiding Bishop CJS of LDS v. Purcell*, supra, págs. 722–723.

En el caso de autos, la parte demandante recurrente, junto con su moción para solicitar sentencia sumaria, presentó el contrato de seguros suscrito entre las partes; declaraciones juradas de los funcionarios de PFZ, Sres. Jack Katz, Roger Wall y Luis Betancourt Mundo; la solicitud de permiso para demoler las estructuras, dirigida al Departamento de Recursos Naturales y la autorización de dicho Departamento; misivas cursadas a la compañía aseguradora, y el acuerdo de transacción de PFZ con los terceros perjudicados. Mediante dichos documentos, PFZ alega que las tres (3) estructuras fueron demolidas por equivocación bajo la *creencia* de que las estructuras le pertenecían y estaban dentro de su propiedad. También aseguran que el propósito de la demolición fue eliminar el peligro que las mismas representaban para la seguridad de terceros. Estos documentos no incluyen afirmación alguna por parte de PFZ de que la compañía era dueña, poseedora o que tenía bajo su cuidado, control o custodia las estructuras demolidas, en cuanto a la aplicación de la cláusula en cuestión.

Por otra parte, la aseguradora acompañó su moción en oposición de sentencia sumaria con la transcripción de la deposición del señor Katz y una copia de la demanda de *injunction* presentada por PFZ contra personas que habían edificado en su finca. Utilizó las mismas para demostrar que PFZ fue poseedora de las estructuras demolidas durante casi treinta (30) años; que Katz, y por ende la compañía que éste representaba, conocía las colindancias de la

finca y sabía que las estructuras no estaban dentro de las mismas. Pretendió, pues, controvertir un hecho fundamental para la solución de la disputa, la posesión de las estructuras demolidas. Surgió, de esta forma, una controversia genuina sobre la posesión de dichas estructuras y, por ende, la aplicación de la cláusula de exclusión.[18]

Por lo tanto, de los documentos obrantes en autos surge, con meridiana claridad, que el tribunal no tuvo ante sí, al resolver la moción de sentencia sumaria a favor del promovido, todos los hechos esenciales para juzgar si la cláusula era de aplicación a los hechos particulares de este caso.[19] Estos documentos también reflejan que existe una controversia sobre la posesión de las estructuras demolidas. No procedía la sentencia sumaria solicitada por parte de la parte demandante recurrente como tampoco la desestimación del caso.[20]

Por todo lo antes expuesto, *se dictará sentencia revocando la dictada por el tribunal de instancia y se devuelve el caso para que continúen los procedimientos de forma cónsona con lo aquí resuelto.*

El Juez Asociado Señor Negrón García no intervino. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

---

[18] De hecho, la aseguradora en sus mociones en oposición a que se dicte sentencia sumaria solicita autorización al tribunal para continuar el descubrimiento de prueba para aclarar los hechos que dan lugar a la controversia de autos.

[19] No se acompañaron, por ejemplo, los planos de la propiedad, la ubicación específica de las estructuras, las declaraciones juradas que afirmaran o negaran la posesión, custodia o control, o propiedad de las estructuras.

[20] Al desestimar una demanda a base de las Reglas de Procedimiento Civil, el tribunal debe considerar la política judicial de que los casos se ventilen en sus méritos. *Rivera Santana v. Superior Packing*, supra.