ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| JENNIFER ACEVEDO NEGRÓN<br><br>Querellante-Recurrida<br><br>v.<br><br>EMPRESAS STEWART CEMENTERIOS<br><br>Querellada-Peticionaria | KLCE202301472 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. BY2023CV00400<br><br>Sala: 402<br><br>Sobre: DESPIDO INJUSTIFICADO, PROCEDIMIENTO SUMARIO Y LEY NÚM. 2-1961 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece la parte peticionaria, Empresas Stewart-Cementerios (en adelante, "Stewart"), para solicitarnos que se revise y revoque la *Resolución* emitida el 15 de diciembre de 2023 y notificada a las partes el 18 de diciembre del mismo año por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en la cual declaró *No Ha Lugar* a la *Moción de Sentencia Sumaria*.

La parte recurrida, la señora Jennifer Acevedo Negrón (en adelante, señora Acevedo Negrón), compareció mediante "*Oposición a Certiorari*".

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, expedimos el auto de C*ertiorari* y confirmamos *Resolución* recurrida, por los fundamentos que expondremos a continuación.

**I**

La *Querella* de epígrafe fue presentada el 25 de enero de 2023 bajo la Ley Núm. 2 de octubre de 1961, también conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales, según enmendada, 32 LPRA sec. 3118 et seq. (en adelante, "Ley Núm. 2-1961"), en contra de Stewart. Se presentó una reclamación por despido injustificado al palio de la Ley Núm. 80 de 30 de mayo de 1976, también conocida como "Ley Sobre Despidos Injustificados", Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq. (en adelante, "Ley Núm. 80-1976").[1] **El despido de la recurrida ocurrió el 9 de diciembre de 2022.**

El 9 de febrero de 2023 la peticionaria presentó su *Contestación a querella.*[2] Sostuvo que el despido había sido justificado, toda vez que se debió a un patrón de conducta impropia por parte de la recurrida, que abarcó desde el año 2017 hasta el año 2022 donde concluyó con su eventual despido. Así las cosas, el 24 de agosto de 2023, la parte peticionaria presentó una *Solicitud de Sentencia Sumaria* al amparo de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V R. 36.[3] En esencia, sostuvo que cumplió con lo requerido bajo la Ley Núm. 80-1976 para que el despido fuera con justa causa. Además, como parte de su argumento acompañó su moción con 58 hechos incontrovertidos basados en la deposición de la señora Acevedo Negrón. Posteriormente, el 7 de septiembre de 2023 la recurrida presentó una *Moción de Oposición a Solicitud de Sentencia Sumaria.*[4] A estos efectos, Stewart solicitó autorización para replicar a dicha oposición.[5] Empero, dicha solicitud fue denegada por el foro primario.[6]

---

[1] Apéndice 1 del Recurso de *Certiorari*, págs. 1-2.
[2] Apéndice 2 del Recurso de *Certiorari*, págs. 3-7.
[3] Apéndice 3 del Recurso de *Certiorari*, págs. 8-91.
[4] Apéndice 4 del Recurso de *Certiorari*, págs. 92-194
[5] Apéndice 5 del Recurso de *Certiorari*, págs. 195-196.
[6] Apéndice 6 del Recurso de *Certiorari*, pág. 197.

El 15 de diciembre de 2023, el Foro a *quo* emitió una *Resolución*, donde denegó la solicitud de *Sentencia Sumaria*.[7] El foro primario concluyó que no procedía dictar sentencia sumariamente toda vez que existían controversias de hechos.

Inconforme con el dictamen del Tribunal de Primera Instancia y ante la denegatoria de la *Moción de Sentencia Sumaria*, el 8 de enero de 2024, la parte peticionaria presentó el auto de *Certiorari* ante nos, donde le imputó al foro recurrido el siguiente señalamiento de error:

> ERRÓ EL TPI AL IDENTIFICAR COMO HECHOS CONTROVERTIDOS LAS CONTROVERSIAS DE DERECHO QUE VIENE LLAMADO A RESOLVER, NEGÁNDOSE A DICTAR SENTENCIA A TONO CON LAS DETERMINACIONES FÁCTICAS DEL CASO YA REALIZADAS.

Examinado el recurso en su totalidad y con la comparecencia ambas partes, procedemos a establecer el derecho aplicable y resolver.

## II

### -*A*-

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 2023 TSPR 65, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. 32 LPRA Ap. V, R. 52. 1.; *Mun. de Caguas v. JRO Construction,* 201 DPR

---

[7] Apéndice 7 del Recurso de *Certiorari,* págs. 198-218.

703, 709 (2019). En lo pertinente, la Regla 52.1, *supra,* dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.
> 32 LPRA Ap. V, R. 52.1

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction, supra,* pág. 712; *IG Builders et al. v. BBVAPR, supra,* pág. 338. Así pues, la discreción judicial para expedir o no el auto de *Certiorari* no ocurre en un vacío ni en ausencia de parámetros. Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari.* La referida regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009). Es por ello que los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra; Cruz Flores et al. v. Hospital Ryder Memorial, Inc.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000).

***-B-***

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios

civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 36 LPRA Ap. V. R. 36.1. La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Id.* pág. 460.

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley. *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 442-443.

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

(1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.

*Management Administration Services, Corp v. ELA*, 152 DPR 599, 611 (2000).

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 335 (2021).

Asimismo, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v Gen, Acc Ins. Co.* 136 DPR 881, 912-913 (1994). No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *Id.* Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

(1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.

*Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 981.

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015). Ahora bien, el Tribunal Supremo de Puerto Rico estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

(1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;

(2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;

(3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia.

*Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 982.

**-C-**

La Ley Núm. 80 de 30 de mayo de 1976, también conocida como la Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq. (en adelante, Ley Núm. 80-1976), cumple el fin de proteger a los empleados de actuaciones arbitrarias del patrono al disponer de

remedios económicos que desalienten los despidos injustificados. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 770 (2022); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015). Según establecido por el Tribunal Supremo de Puerto Rico, esta legislación tiene dos propósitos principales: (1) desalentar la práctica de despedir a empleados sin que medie justa causa; y (2) proveer a los empleados remedios consustanciales a los daños causados por los despidos injustificados. *González Méndez v. Acción Social et al.*, 196 DPR 213, 229-230 (2016).

El estatuto dispone que todo empleado contratado sin tiempo determinado que trabaja para un patrono mediante remuneración y que fuere despedido sin que haya mediado una justa causa tendrá derecho a recibir de su patrono una indemnización, comúnmente conocida como "la mesada". Artículo 1 de la Ley Sobre Despidos Injustificados, Ley Núm. 80-1976, 29 LPRA 185a; *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra*, pág. 771. Este resarcimiento constituye un remedio exclusivo disponible para aquellos empleados que fueron despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despido. *Indulac v. Central General de Trabajadores*, 207 DPR 279, 298 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 36-37 (2020). Ahora bien, cabe destacar que nuestro ordenamiento laboral no prohíbe el despido de un empleado ya que un empleado puede ser despedido mediante justa causa, pero cuando no exista justa causa, se configurará la repercusión de que el patrono deberá asumir el pago de la mesada a favor del empleado. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra*, pág.*771; Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 983 (2022).

Según el artículo 2 de la precitada Ley, se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero

capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:

[...]

**(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado**.
(Énfasis suplido).

[...]

Además, señala la ley que "[n]o se considerará justa causa para el despido de un empleado, la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo". 29 LPRA sec. 185b(c).

El Tribunal Supremo de Puerto Rico ha reiterado que en apoyo a lo dispuesto en el artículo dos (2) de la precitada ley, dentro de lo establecido como justa causa y en lo concerniente específicamente al comportamiento del empleado, el esquema normativo dispone que se reputará justa causa para el despido si este: **"(1) ha exhibido un patrón de conducta impropia o desordenada; (2) no ha cumplido con sus labores de manera eficiente, ha realizado tarde o negligentemente su trabajo, o en violación a las normas aplicables, o (3) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación**

**del establecimiento, los cuales le han sido suministrados oportunamente**". *Ortiz Ortiz v. Medtronic Puerto Rico, Operations Co., supra*, pág. 772; *Indulac v. Central General de Trabajadores, supra*, pág. 299; *León Torres v. Rivera Lebrón, supra*, pág. 37; *González Méndez v. Acción Social*, 196 DPR 213, 231 (2016).

De lo anterior surge, que la violación a las reglas de un patrono **podría ser motivo justificado para el despido de un trabajador, siempre y cuando: "(1) la violación a los reglamentos sea reiterada; (2) las reglas y los reglamentos sean razonables; (3) se suministre oportunamente copia escrita de estas reglas y estos reglamentos al trabajador, y (4) el despido del empleado no se haga por mero capricho del patrono o sin una razón relacionada con el buen y normal funcionamiento del establecimiento"**. *Feliciano Martes v. Sheraton*, 182 DPR 368 381-382 (2011). (Énfasis suplido).

Por último, "[l]as violaciones de las normas del empleo constituirán "justa causa" para el despido cuando el patrono logre demostrar: (1) que las reglas establecidas para el funcionamiento del establecimiento son razonables, (2) que le suministró una copia escrita de dichas normas al empleado, y (3) que el empleado las violó en reiteradas ocasiones". *Jusino et als. v. Walgreens*, 155 DPR 560, 573 (2001).

Por esa razón, los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930-931 (2015); *Jusino et als. v. Walgreens, supra*, pág. 573.

Como sabemos, "la ley no dispone un mínimo de amonestaciones antes de que el patrono pueda despedir al empleado

justificadamente, ni tampoco que la amonestación debe hacerse en determinada forma". (citas omitidas). Cónsono con lo expuesto, reafirmamos que la Ley Núm. 80-1976 "no pretende, ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia". *Ortiz Ortiz v. Medtronic Puerto Rico, Operations Co., supra*, pág. 773; *SLG Torres Matundan v. Centro Patología, supra,* pág. 930.

En síntesis, cuando un patrono despide a un empleado por una causal no enumerada en la Ley Núm. 80-1976, nuestro análisis para determinar si esta constituye justa causa se basa en el principio rector de la Ley Núm. 80-1976, contenido en el segundo párrafo de su artículo 2, *supra*, el cual establece lo siguiente: "No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". *Ortiz Ortiz v. Medtronic Puerto Rico, Operations Co., supra,* pág. 772; *SLG Torres Matundan v. Centro Patología, supra*, pág. 931.

**III**

La parte peticionaria acude ante este Tribunal solicitando que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia de Bayamón, por no estar conforme con la determinación del foro primario.

En el error señalado, Stewart sostiene que el Foro a *quo* erró al identificar como "Hechos Incontrovertidos" las controversias de derecho que viene llamado a resolver, negándose a dictar sentencia a tono con las determinaciones fácticas del caso. *No le asiste la razón.*

En su petitorio, Stewart sostiene que al haber acogido cincuenta y ocho (58) de los cincuenta y nueve (59) hechos

originalmente propuestos por ella, el Tribunal de Primera Instancia erróneamente determinó que existían controversia en los once (11) "Hechos Controvertidos" que enumeró, y que en realidad eran controversias de derecho.

El Tribunal de Primera Instancia estableció los siguientes Hechos Incontrovertidos y los cuales acogemos como nuestros:

## HECHOS INCONTROVERTIDOS

1) La querellante comenzó a trabajar como vendedora para la compañía, que se dedica a operar cementerios y funerarias, el 23 de mayo de 2016 mediante un contrato de empleo probatorio.

2) Allá para mayo de 2022 el Sr. Carlos Torres comenzó a supervisar a la querellante. Antes de esto, había sido supervisada por la Sra. Kenia Arroyo, Gerente General del Cementerio, y por el Sr. Orlando Rivera.

3) La querellante acusó recibo del Manual de Empleados de la querellada para los años 2016, 2019, 2021.

4) La querellante se comprometió a leer el Manual de Empleados y a cumplir fielmente con sus disposiciones.

5) La querellante también recibió copia del protocolo para prevenir y atender casos de acoso laboral y el Código de Conducta para empleados de cementerios.

6) El 9 de marzo de 2017, la querellante recibió una amonestación fechada para el 7 de marzo de 2017. La querellante firmó la amonestación y no hizo ningún comentario en ella.

7) En dicha amonestación, se le señaló a la querellante cuáles fueron las reglas que violentó, y se le indicó que había incurrido en conducta rebelde, indecente, inmoral, corrupta, no profesional o grosera. Se le indicó cuáles eran las medidas correctivas que tenía que adoptar.

8) Específicamente, se le indicó a la querellante, que había violentado la normas generales incluidas en los Estándares Profesionales y Reglas Generales de Conducta, a saber: (1) emitir comentarios con que generalmente se pretende indisponer a una persona con otra; (2) no trabajar en armonía con los demás compañeros; (3) Obligar, incitar o de otra forma inducir a otro asociado a violar las normas de la compañía; (4) ser descortés o irrespetuoso con sus superiores o asociados de la Compañía o en otros lugares donde el asociado se encuentre en gestión de su trabajo o por motivo del mismo, entre otros.

9) En dicha amonestación, se le apercibió además a la querellante de que cualquier infracción en el futuro podía resultar en medidas disciplinarias que incluyeran la terminación de su empleo.

10) El 13 de diciembre de 2017, la querellante recibió otra amonestación, titulada "Aviso de Acción Disciplinaria, Registro escrito con suspensión de empleo y sueldo".

11) En dicho documento, se le indicó a la querellante que su actitud y acciones incorrectas habían sido continuas desde la reunión que habían sostenido con ella el 8 de noviembre de 2017. Le indicaron además que sus acciones no serían toleradas en el ambiente de trabajo, poque no eran acorde a los valores corporativos ni a las reglas de conducta de la querellada.

12) En el documento de amonestación le indicaron, además, que había incurrido en insubordinación, le explicaron cuáles fueron las reglas de conducta que violentó, con referencia al Manual de Empleados y los Estándares Profesionales y reglas de Conducta violentadas, y cuáles eran las medidas correctivas que debía adoptar. También le apercibieron de que cualquier infracción en el futuro podía resultar en acciones disciplinarias adicionales, incluyendo el despido.

13) En dicha ocasión, se le amonestó por haberle faltado el respeto a una compañera de trabajo y a un cliente, y por haber presentado molestia y estar "refunfuñando" cuando se le delegó trabajar un caso de un cliente, indicando que a ella "le daban los tostones", frente a la Gerente General del Cementerio, la Sra. Kenia Arroyo.

14) La querellante firmó el documento sin hacer ningún comentario en él. La querellante reconoce que pudo haber indicado que no estaba de acuerdo con el documento, pues el mismo proveía espacio para ello, pero no lo hizo.

15) El 26 de octubre de 2018, la querellante recibió otra amonestación por no haber cumplido con los procedimientos establecidos por la compañía para enterramientos. Esto, pues no realizó el trazado de un lugar de enterramiento antes de llevar a la familia a verlo, a pesar de saber que el procedimiento interno así lo requería, de haber recibido copia de dicho procedimiento y de haber sido entrenada al respecto.

16) La querellante recibió dicha amonestación y no hizo ningún comentario en ella, a pesar de que la misma proveía un espacio para comentarios del empleado.

17) En esta amonestación, a la querellante le indicaron cuáles eran las medidas correctivas que tenía que cumplir y le apercibieron de que cualquier infracción futura podía resultar en acciones disciplinarias incluyendo la terminación de empleo.

18) El 29 de marzo de 2019, la querellante recibió otra amonestación. En esta ocasión, porque no siguió el debido procedimiento administrativo en la coordinación de un sepelio, pues adelantó la hora del sepelio a la familia sin haber confirmado con la administración del cementerio que el adelanto podía llevarse a cabo. Esto causó que la familia llegara al sepelio cuando todavía el mismo no estaba listo y los procesos no se habían terminado.

19) La querellante firmó el documento, que indicaba cuáles eran las medidas correctivas que esperaban que siguiera de ahí en adelante, sin hacer comentario alguno en él.

20) La norma violentada por la querellante en dicha ocasión era la misma por la cual se le había señalado en la amonestación anterior.

21) A través de esta amonestación la querellante fue apercibida nuevamente de que cualquier infracción adicional conllevaría acciones disciplinarias adicionales, incluyendo el despido.

22) El 29 de mayo de 2019, la querellante recibió otra amonestación, fechada 21 de mayo de 2019, porque no siguió el debido proceso de verificación de entierros requerido por las políticas de la compañía. En dicha ocasión, la querellante llevó a la familia a la ubicación del lugar de enterramiento sin que se hubiese colocado el "tape" correspondiente.

23) A través de dicho documento, se le indicó a la querellante que el no llevar a cabo ese procedimiento, para el cual había sido adiestrada, afecta el buen y normal funcionamiento de la compañía, pues la exponía a cometer errores a la hora de llevar a cabo el entierro de manera digna. Esto, se le indicó en la acción disciplinaria, puede traer consecuencias negativas financieras, legales y de satisfacción al cliente.

24) En esta ocasión se le indicó a la querellante que tenía que cumplir a cabalidad el proceso de verificación de entierro y los procesos y políticas establecidos por la empresa. Se le indicó también que cualquier infracción en el futuro podía resultar en acciones disciplinarias adicionales, incluyendo la terminación de empleo.

25) La querellante firmó el documento y no hizo ningún comentario en él.

26) El 12 de marzo de 2021, la querellante recibió otra amonestación titulada "Represión Escrita, Aviso de Acción Disciplinaria". En la misma, su supervisora le indicó que se habían reunido con ella y dialogado en un sin número de ocasiones, que había sido amonestada anteriormente y suspendida en años anteriores y que aun así incurrió en la misma conducta.

27) Específicamente, se le indicó a la querellante que (1) expresó, sobre un cliente que llegó y procuró por ella, "ese cliente me enciende… ya no sé cómo explicarle", comentario que hacía acerca de todos sus clientes; (2) expresó molestia e incomodidad al tener que atender un caso "at need" de una de sus compañeras vendedoras que había quedado incompleto; (3) que incitó a otro compañero a colocar un cliente en alta voz sin notificárselo, para que todo el mundo lo escuchara; (4) mostró actitud negativa y molesta a atender a una clienta indicando "dile que estoy en el baño, es que esa señora… ay Dios".

28) En la amonestación que recibió el 12 de marzo de 2021, se le indicó que no debía sentir molestia por atender a clientes, pues eso era parte de sus funciones y la descripción de su puesto. Se le indicó además que su lenguaje inapropiado, su conducta y su actitud estaban afectando el funcionamiento del equipo y no promovía un ambiente de trabajo saludable.

29) Se le indicó además que su comportamiento violentaba las reglas generales de conducta de la compañía y los valores

fundamentales de respeto, integridad, excelencia en el servicio y establecer relaciones duraderas.

30) Le indicaron, además, que había incurrido en insubordinación, que se definía como "negativa deliberada de seguir órdenes, conducta irrespetuosa a su supervisor, y/o menospreciar la autoridad del supervisor".

31) La querellante firmó la amonestación sin hacer ningún comentario en ella.

32) La querellante admite que en la amonestación recibida el 12 de marzo de 2021 le volvieron a señalar lo mismo que le habían señalado en las amonestaciones que había recibido anteriormente, tales como (1) incurrir en conducta rebelde, no profesional o grosera; (2) ser descortés, irrespetuoso con superiores o asociados de la compañía, o cualquier otra persona en los predios de la compañía, o en otro lugar donde el asociado se encuentre en gestión de su trabajo o por motivo del mismo; (3) no trabajar en armonía con los demás compañeros de trabajo; (4) obligar, incitar o de otra forma inducir a otro asociado a violar las normas y reglas de conducta.

33) A través de esta amonestación, se le indicó a la querellante que se esperaba (1) que se abstuviera de realizar comentarios fuera de lugar, que (2) mantuviera los comentarios profesionales y respetuosos en todo momento, que (3) fomentara un ambiente de trabajo positivo, y con buena actitud en cuanto al cliente.

34) Le indicaron también a la querellante que cualquier infracción en el futuro podía resultar en acciones disciplinarias adicionales, incluyendo, pero sin limitarse al despido.

35) La querellante admite que no mejoró su conducta luego de recibir este memorando.

36) El 13 de agosto del año 2021, la querellante se reunió con la Sra. Kenia Arroyo, quien le entregó otro memorando disciplinario. En esa ocasión, la medida disciplinaria se le entregó por no haber seguido el procedimiento requerido para los Cemetery Service Request de una propiedad y por haber provisto información falsa durante la investigación del incidente. La querellante se negó a firmar el documento, pero recuerda que su supervisora, la Sra. Kenia Arroyo se reunió con ella para entregárselo y discutirlo.

37) El mismo indicaba que la conducta de la querellante contrastaba con los valores de la empresa y que estaba afectando negativamente el servicio al cliente y el trabajo en equipo. Indicaba además que sobrecargaba innecesariamente el trabajo de la gerencia y a otros compañeros de trabajo, afectando el buen y normal funcionamiento de la localidad.

38) Específicamente, le indicaron que, entre otras, (1) realizó tareas al contrario de la forma esperada, reflejando una actitud negligente; (2) Obligar, incitar o de otra forma inducir a otro asociado a violar las normas de la compañía; (3) proveer información incorrecta, falsa o negarse a ofrecer información necesaria en cualquier documento o investigación; (4) conducta rebelde, indecente, inmoral, corrupta, no profesional...; (5) crear incidentes que violenten

el orden institucional o que obstruyan la operación normal de la Compañía; (6) ocasionar pérdidas institucionales por el mal uso de la discreción y (7) negativa deliberada de seguir órdenes.

39) Finalmente, le indicaron a la querellante en el documento que las infracciones adicionales podrían resultar en acciones disciplinarias adicionales, incluyendo la terminación de empleo.

40) Como resultado de dicha amonestación, la querellante fue suspendida de empleo y sueldo desde el 16 hasta el 19 de agosto de 2021.

41) Esta suspensión fue la segunda suspensión disciplinaria de la querellante.

42) La querellante sabe lo que es disciplina progresiva y admite que recibió disciplina progresiva a través de las amonestaciones que recibió.

43) El 16 de febrero de 2022, la querellante fue suspendida de empleo y sueldo nuevamente. Dicha suspensión constituyó su tercera suspensión disciplinaria.

44) La tercera suspensión disciplinaria de la querellante, que ocurrió del 16 al 21 de febrero de 2022, se suscitó como resultado de haber vendido una urna cuyas medidas eran más grandes que las medidas del columbario donde debía colocarse para el enterramiento. La familia estaba presente para el enterramiento cuando se percataron de que la urna no cabía en el columbario.

45) En el documento de suspensión, se le indicó a la querellante que dicha acción afectó negativamente el servicio al cliente y el trabajo al equipo, que sobrecargaba innecesariamente a la gerencia y afectaba el buen y normal funcionamiento de la localidad.

46) La querellante admite que se le habían realizado estos mismos señalamientos anteriormente, a través de las medidas disciplinarias anteriores.

47) El documento de suspensión, que la querellante firmó sin hacer ningún comentario en él, indicaba que se esperaba que ésta se desempeñara según su descripción de puesto, que cumpliera a cabalidad las políticas y procedimientos de la compañía y que cumpliera con las reglas generales de conducta y los valores fundamentales de respeto, integridad y excelencia en el servicio.

48) A través del documento de suspensión se le indicó a la Querellante, además, que cualquier infracción en el futuro pudiese resultar en acciones disciplinarias adicionales, incluyendo la terminación de empleo.

49) La querellante recuerda haber participado de su procedimiento de evaluación de desempeño correspondiente al año 2021 y haber cumplimentado el formulario correspondiente.

50) En la evaluación, la querellante reconoció por escrito que tenía que tener más autocontrol.

51) Reconoció también que sus gerentes se encargaban de notificarle cada vez que estaban fuera de lo que debía hacer.

52) En su última evaluación como empleada de la querellada, correspondiente al año 2021 y que la querellante finalizó el 1 de marzo de 2022, a la querellante se le indicó que no estaba cumpliendo con las expectativas de la compañía.

53) En octubre del año 2022, la querellante atendió a la señora Rodríguez.

54) La señora Rodríguez presentó una Querella ante el DACO para el 21 de noviembre de 2022.

55) Para la fecha en que la señora Rodríguez presentó la querella ante DACO, la querellante se encontraba de vacaciones. La querellante se reintegró a sus labores en la empresa en diciembre de 2022.

56) La querellante fue despedida el 9 de diciembre de 2022.

57) La querellante reconoce que antes de ser despedida se le hicieron varios señalamientos sobre su conducta.

58) La querellante reconoce que fue objeto de disciplina progresiva, incluyendo tres suspensiones disciplinarias, antes de su despido.

A su vez, el Foro a *quo* detalló como Hechos Controvertidos los siguientes:

### HECHOS CONTROVERTIDOS

1) Si verdaderamente existe un patrón de conducta impropia o desordenada, así como de violación reiterada a las normas de la empresa de parte de la querellante a pesar de la amplitud del lapso entre la tercera suspensión y su despido.

2) Si el despido de la querellante fue uno justificado y las razones del mismo.

3) Cuáles fueron las normas que motivaron el despido de la querellante y que presuntamente fueron transgredidas por esta al momento de la cesantía.

4) Si ESC notificó adecuadamente las faltas aparentemente cometidas por la querellante que provocaron su despido.

5) La gravedad de las presuntas faltas cometidas por la querellante al momento de su despido.

6) Si el despido de la querellante fue en castigo o escarmiento por la mera presentación de la querella ante el DACO instada por la señora Rodríguez.

7) Cuáles fueron las circunstancias que dieron paso a la querella presentada por la señora Rodríguez ante el DACO en contra de ESC y la participación de la querellante en tales eventos.

8) Si la querellante en torno a la situación suscitada con la señora Rodríguez actuó siguiendo los procedimiento e instrucciones establecidos por su supervisora, la señora Lleras o si por el contrario las actuaciones de la querellante se apartaron totalmente de las instrucciones recibidas por sus superiores.

9) Cuáles fueron los pormenores relacionados al incidente ocurrido en diciembre de 2022 entre la querellante con la gerente, la Sra. María Arroyo.

10) Si tanto la situación de la querellante en torno a lo ocurrido con la señora Rodríguez y el incidente de diciembre de 2022 con la Sra. María Arroyo fueron investigados por la querellada antes de proceder al despido de la señora Acevedo y los resultados de dicha investigación.

11) El monto de la mesada, si alguna.

Alega la parte Peticionaria que, dichos "hechos controvertidos" son en realidad conclusiones de derecho, por lo que procedía dictar sentencia sumariamente. Arguye que como la señora Acevedo Negrón aceptó que cometió las faltas reseñadas y haber recibido disciplina progresiva, la parte peticionaria se reitera en que el foro primario debió haber aceptado los hechos controvertidos por lo que no restaba más que aplicar el derecho. En adición, sostiene que su proceder fue correcto para salvaguardar la integridad de su buen funcionamiento como empresa. Su argumento se limita a dicho planteamiento.

Por su parte, la señora Acevedo Negrón adujo que los "hechos controvertidos" no son cuestiones de derecho, sino asuntos de hecho que el Tribunal de Primera Instancia debe dilucidar mediante vista evidenciaria y no mediante sentencia sumaria.[8] La recurrida expuso en su *Oposición a Moción de Sentencia Sumaria* que existe controversia por la falta de temporalidad entre el despido y los alegados eventos, siendo esto un lapso de diez (10) meses. Además, arguye que no se les señalaron las infracciones a las aparentes normas violentadas. La señora Acevedo Negrón sostiene que actuó correctamente y tal intervención fue avalada por Stewart en su

---

[8] Recurso de Oposición, pág. 3.

"*Contestación a querella*" ante el proceso presentado por un cliente ante DACo (Departamento de Asuntos del Consumidor, por sus siglas en español). Señala que Stewart acomodaticiamente omitió dichos planteamientos en la *Solicitud de Sentencia Sumaria.* Finalmente, aduce que no existe una justa causa para su despido, toda vez que su proceder fue conforme a las instrucciones de sus superiores.

Evaluados ambos planteamientos, y realizado un examen de *Novo* de la *Sentencia Sumaria* precitada, así como la oposición precitada y la *Resolución* emitida por el Tribunal de Primera Instancia, podemos colegir que no procede dictar sentencia sumariamente. *Nos explicamos.*

De un análisis completo del expediente de autos, se desprende que en la *"Resolución"* denegando la solicitud de sentencia sumaria, el Foro a *quo* se fundamenta en la controversia de hechos materiales de la moción para denegar. Establecido que, en nuestro sistema de derecho, que una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria solo cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente. *Pepsi-Cola v. Mun. Cidra,* 186 DPR 713,756 (2012). Pues sólo así cuando el tribunal esté claramente convencido de la ausencia de controversia respecto a hechos materiales del caso y de que la vista evidenciaria es innecesaria, procederá que dicte una sentencia sumaria. Incluso, aun cuando no se presente prueba que controvierta la presentada por el promovente, no significa necesariamente que procede la sentencia sumaria. *Nissen Holland v. Genthaller,* 172 DPR 503, 511 (2007).

En lo pertinente, reza el referido dictamen del foro recurrido de la siguiente manera:

> Al evaluar de forma crítica y reflexiva el expediente del presente caso [,] así como las solicitudes ante nuestra consideración observamos que se desprende la

existencia de controversias de hechos que no permiten que la reclamación pueda disponerse por la vía sumaria. **En el caso ante nuestra consideración surgen elementos subjetivos de credibilidad e intención y sobre todo serias dudas en cuanto a los argumentos sostenidos por las partes, así como las circunstancias que rodean el despido de la querellante lo cual tampoco viabilizan que el caso se pueda disponer mediante el uso del mecanismo de la sentencia sumaria**.

**Los planteamientos expuestos por las partes, los cuales han sido minuciosamente evaluados por este foro no nos persuaden a que en estos momentos sea procedente dictar sentencia sumaria a favor del querellado principalmente por la existencia de controversias de hechos**.[9]

(Énfasis suplido).

Ahora bien, de los once (11) Hechos Controvertidos que el Tribunal de Instancia acogió, procedemos a agrupar las controversias que se subvierten en ellos de la siguiente manera: los hechos uno (1), tres (3), cuatro (4) y cinco (5) versan sobre la conducta, las normas de la empresa y las aparentes faltas cometidas por la recurrida que ocasionaron el despido de esta.

1) Si verdaderamente existe un patrón de conducta impropia o desordenada, así como de violación reiterada a las normas de la empresa de parte de la querellante a pesar de la amplitud del lapso entre la tercera suspensión y su despido.

[…]

3) Cuáles fueron las normas que motivaron el despido de la querellante y que presuntamente fueron transgredidas por esta al momento de la cesantía.

4) Si ESC notificó adecuadamente las faltas aparentemente cometidas por la querellante que provocaron su despido.

5) La gravedad de las presuntas faltas cometidas por la querellante al momento de su despido.

Como podemos observar, los errores van dirigidos a examinar la prueba que en su día las partes puedan desfilar ante el foro primario. Es preciso señalar que no obra en el expediente ante nos, evidencia tal como, el manual de empleados, las normas de la

---

[9] Apéndice 7 del Recurso de *Certiorari,* págs. 198-218.

empresa, ni la carta de despido. Por lo que, Stewart no nos coloca en una posición para realizar una evaluación ponderada que nos mueva a modificar al foro primario.

Los hechos seis (6), siete (7), ocho (8) y diez (10) son conducentes al proceso que Stewart litigó ante DACo, por la querella presentada por la señora Rodríguez, y si como consecuencia de ello, Stewart tomó represalias en contra de la recurrida.

> 6) Si el despido de la querellante fue en castigo o escarmiento por la mera presentación de la querella ante el DACO instada por la señora Rodríguez.
>
> 7) Cuáles fueron las circunstancias que dieron paso a la querella presentada por la señora Rodríguez ante el DACO en contra de ESC y la participación de la querellante en tales eventos.
>
> 8) Si la querellante en torno a la situación suscitada con la señora Rodríguez actuó siguiendo los procedimiento e instrucciones establecidos por su supervisora, la señora Lleras o si por el contrario las actuaciones de la querellante se apartaron totalmente de las instrucciones recibidas por sus superiores.
>
> 10) Si tanto la situación de la querellante en torno a lo ocurrido con la señora Rodríguez y el incidente de diciembre de 2022 con la Sra. María Arroyo fueron investigados por la querellada antes de proceder al despido de la señora Acevedo y los resultados de dicha investigación.

Adviértase que, este proceso surgido ante DACo es el evento más cercano al despido de la señora Acevedo Negrón, y ante la falta de documentos en el expediente de autos, surgen serias dudas sobre si el despido fue a causa de dicho procedimiento en contra de Stewart.

De la misma manera, el foro a *quo* señala en el hecho controvertido nueve (9) un evento aislado, que ocurrió entre la gerente, la señora María Arroyo y la recurrida.

> 9) Cuáles fueron los pormenores relacionados al incidente ocurrido en diciembre de 2022 entre la querellante con la gerente, la Sra. María Arroyo.

Por último, procedemos agrupar los hechos dos (2) y once (11), que van enfocados en la legitimidad del despido y la mesada. Veamos:

2) Si el despido de la querellante fue uno justificado y las razones del mismo.

[...]

11) El monto de la mesada, si alguna.

Es necesario resaltar que, sobre estos últimos hechos en controversia específicamente, subyacen en ser una controversia estricto asunto de derecho. Pues el Foro a *quo* debe ponderar la prueba necesaria que pueda desfilarse en su día para rebatir la legalidad del despido, y si eso es procedente, determinar la mesada a la cual la señora Acevedo Negrón sería merecedora.

Como podemos apreciar, los eventos señalados han ocurrido con una diferencia de tiempo razonable, lo que nos obliga a concluir que existen controversias de hechos que impiden dictar sentencia de manera sumaria.

El Tribunal de Primera Instancia concluyó que no procedía dictar sentencia sumaria ante los hechos antes mencionados. Coincidimos con el foro recurrido, y ante la falta de documentación que sustenten las alegaciones de Stewart no procede resolver sumariamente. En ausencia de documentación como el manual de empleados, las normas de la empresa, la carta de despido es forzoso concluir que la prueba documental presentada en el expediente de epígrafe no controvirtió los hechos propuestos por la *Resolución* del Tribunal de Primera Instancia. En adición, colegimos con el foro recurrido en que existen Hechos en Controversia, con excepción de los Hechos en Controversia número dos (2) y once (11), los cuales estriban en ser exclusivamente controversias de derecho. Por lo que, los restantes nueve (9) Hechos en Controversia que impiden que este Tribunal, aun realizando un examen de *novo* pueda dictar sentencia sumaria sobre la presente causa de acción. Toda vez que, examinada la jurisprudencia antes precitada sobre el curso a seguir ante una

moción de sentencia sumaria, concluimos que Stewart no nos coloca en posición de resolver sumariamente.

Por otro lado, destacamos que según el derecho aplicable a la Ley Núm. 80-1976 y la jurisprudencia precitada, concluimos que Stewart no logró rebatir los elementos necesarios establecidos para justificar el despido de la recurrida y de esa forma, colocar en posición al Tribunal de Primera Instancia para sostener tal postura. Por lo que es forzoso concluir que el foro recurrido actuó correctamente.

Luego de evaluada la totalidad del expediente, y de analizar la Regla 52.1, antes citada y habida cuenta de que, entendemos que no medió pasión, prejuicio, parcialidad o error manifiesto, y que el criterio rector se basa en la razonabilidad, encontramos que no surge evidencia suficiente que pruebe las alegaciones de la parte peticionaria y rebata la presunción de corrección que merece nuestra deferencia hacia el Foro Primario.

Así las cosas, concluimos que no hallamos sugerencia alguna en los documentos evaluados que indique error de derecho por parte del Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de este dictamen, expedimos el auto de *Certiorari* solicitado y *confirmamos* la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones