<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL XI</td></tr>
<tr>
<td>LUIS GERARDO LOPEZ GARCIA,<br><br>RECURRIDO<br><br>v.<br><br>HOSPITAL GENERAL MENONITA, INC. H/N/C HOSPITAL MENONITA CAGUAS, DR. JORGE L. CORDERO SOTO; Y OTROS<br><br>PETICIONARIO</td>
<td>TA2025CE00852</td>
<td>*Certiorari procedente del Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas*<br><br>Caso núm.: *CG2022CV00916*<br><br>Sobre: DAÑOS Y PERJUICIOS; (IMPERICIA PROFESIONAL MÉDICA)</td>
</tr>
</table>

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

El 3 de diciembre de 2025, el Doctor Jorge L. Cordero Soto (Doctor Cordero Soto) y el Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (SIMED) (en conjunto, la parte peticionaria), presentaron ante nos un recurso de *certiorari* en el que nos solicitan que revoquemos la *Resolución* emitida el 21 de octubre de 2025, enmendada y notificada el 7 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario).[1] En el aludido dictamen, el TPI denegó la solicitud de sentencia sumaria presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari*.

---

[1] Entrada Núm. 81 del caso CG2022CV00916 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

**I.**

El caso de autos tiene su inicio el 23 de marzo de 2022, cuando el señor Luis Gerardo López García (señor López García), la señora Limarie Santiago Acevedo (señora Santiago Acevedo), el señor Luis Gerardo López Medina (señor López Medina) y la señora Sonia N. García Rivera (señora García Rivera) (en conjunto, la parte recurrida), presentaron una *Demanda* en contra de la parte peticionaria sobre daños y perjuicios por impericia médica.[2] En síntesis, arguyó que, el 18 de agosto de 2020, el señor López García fue sometido a una cirugía en la que se le colocó una malla en una hernia, el cual fue realizado por el Doctor Cordero Soto en el Hospital Menonita, en Caguas. Asimismo, alegó que, el 30 de marzo de 2021, el señor López García desarrolló una nueva hernia por lo que, nuevamente, el Doctor Cordero Soto le realizó un procedimiento quirúrgico.

No obstante, el 3 de abril de 2021, la parte recurrida adujo que el señor López García acudió a una sala de emergencias tras sentir dolor abdominal. Allí, se le diagnosticó que tenía una hernia recurrente y, por tanto, fue admitido al hospital por instrucciones del Doctor Cordero Soto. Igualmente, sostuvo que el 7 de abril de 2021, fue sometido a otra cirugía ante la hernia diagnosticada. Ante ello, el señor López García comenzó a desarrollar un cuadro de infección en el área en la que fue previamente intervenido. A consecuencia de la infección, el señor padeció de fiebre, taquicardia, alta presión, y secreciones en su cuerpo.

Ante su insatisfacción con los diagnósticos y cuidado médico, la parte recurrida arguyó que, el 14 de abril de 2021, el señor López García decidió irse del Hospital Menonita y acudió al Hospital HIMA-San Pablo, en Caguas, en donde fue diagnosticado con infección e inflamación debido a la malla, peritonitis, *E. coli.*, y *Fournier*

---

[2] Entrada Núm. 1 del caso CG2022CV00916 en el SUMAC.

*gangrene.* Ante este cuadro, la parte recurrida adujo que la parte peticionaria incurrió en impericia profesional por lo que debía responder por los daños y perjuicios sufridos.

El 16 de mayo de 2022, la parte peticionaria presentó una *Contestación a Demanda* en la que negó, en su mayoría, las imputaciones sobre impericia médica.[3] Además, como defensa afirmativa, señaló que al doctor Cordero Soto lo cobijaban las disposiciones de la *Ley de los Centros Médicos Académicos Regionales de Puerto Rico,* Ley Núm. 136 de 27 de julio de 2006, según enmendada, 24 LPRA sec. 10031 *et. seq,* (en adelante, Ley CEMAR).

Tras varios incidentes procesales, el 3 de octubre de 2025, la parte peticionaria presentó una *Moción de Sentencia Sumaria Solicitando Aplicación de la Ley 136-2006 Centros Médicos Académicos Regionales (CEMAR).*[4] En lo pertinente, argumentó que no existía controversia en cuanto al hecho de que el Doctor Cordero Soto era parte de la facultad médica del Hospital Menonita de Caguas y profesor de la Escuela de Medicina San Juan Bautista. Destacó que, el señor López García fue atendido por dos (2) estudiantes de medicina que hacían su rotación bajo la supervisión del Doctor Cordero Soto. Alegó que, le era de aplicación los límites de acciones contra el Estado que estatuye la Ley CEMAR. Por ende, solicitó que el foro primario emitiera una sentencia sumaria en la que le aplicara al Doctor Cordero Soto los límites estatutarios que dispone la Ley CEMAR.

En respuesta a lo anterior, el 14 de octubre de 2025, la parte recurrida instó una *Oposición a Mociones de Sentencia Sumaria en las Entradas Número 75 y 76.*[5] En síntesis, arguyó que no procedía la disposición sumaria del presente asunto toda vez que, existe

---

[3] Entrada Núm. 16 del caso CG2022CV00916 en el SUMAC.
[4] Entrada Núm. 75 del caso CG2022CV00916 en el SUMAC.
[5] Entrada Núm. 79 del caso CG2022CV00916 en el SUMAC.

controversia con respecto a la intervención de los estudiantes de medicina en la cirugía del senor López García. A su vez, razonó que había controversia si el Doctor Cordero Soto se encontraba en funciones docentes.

Atendida la controversia, el 21 de octubre de 2025, notificada el 2 de octubre de 2025, el TPI emitió una *Resolución* en la que denegó la solicitud de disposición sumaria.[6] En el aludido dictamen, el foro primario realizó las siguientes determinaciones de hechos:

1. El Dr. Cordero es un médico con especialidad en cirugía general desde el año 1991. Se desempeña como cirujano en el Hospital desde el año 2011.

2. El Dr. Cordero tiene un nombramiento Ad Honorem como *Assistant Professor*, en el Departamento de Cirugía de la Escuela de Medicina desde el año 2004.

3. Durante las rotaciones clínicas los estudiantes participan con él como cirujano asignado en las rondas diarias a pacientes hospitalizados, clínicas externas, así como también a las cirugías programadas. Durante el periodo de rotación de 6 semanas rotan los estudiantes de tercer año y que, además, pudiera tener estudiantes interesados en la especialidad de cirugía de cuarto año. Las rotaciones efectivas pero electivas en el cuarto año tienen un período de duración de 4 semanas. El programa de rotación ocurre durante el año académico cada 6 semanas en el tercer año y en el cuarto año cada 4 semanas. El médico cirujano recibe estudiantes todo el año académico para que desarrollen sus destrezas clínicas bajo su supervisión médica.

4. La Dra. Miriam Ramos (Dra. Ramos) es la Decana del área de Ciencias Clínicas de la Escuela de Medicina San Juan Bautista.

5. Entre las múltiples funciones en el decanato que tiene la Dra. Ramos, dirige todo lo que es la sección del área clínica. Específicamente trabaja con los estudiantes, los cuales 2 años se trabaja en oficinas de médico y en hospitales en donde ellos pasan por la pasantía que son primordialmente 6, en el tercer año. Ellos rotan para conocer de las diferentes especialidades y que puedan tomar una decisión en un futuro.

6. La Dra. Ramos es quien se ocupa de colocar a los estudiantes en los hospitales. Tiene un coordinador que le ayuda en estas gestiones. Trabajan con todo lo que sea el currículum, la credencialización de la facultad, los programas de residencias, *teaching* para asegurarse de que los estudiantes estén recibiendo una enseñanza de calidad.

7. La Dra. Ramos coloca a sus estudiantes en varios hospitales entre ellos el Hospital Menonita, que es el hospital principal.

8. La Dra. Ramos fue clara que la escuela tiene un currículum y que se expone a los estudiantes a que tengan las experiencias bastas para conocer el manejo primario de

---

[6] Entrada Núm. 81 del caso CG2022CV00916 en el SUMAC.

un paciente. Deben de tener un conocimiento general básico de cada una de las especialidades para el manejo de esos pacientes. Igualmente, dichas colocaciones son un requisito y está regulado por las agencias acreditadoras.

9. La Dra. Ramos como parte de sus funciones administrativas en la Escuela de Medicina San Juan Bautista trabaja algunos asuntos relacionados a los Centros Médicos Académicos Regionales (CMAR).

10. La persona encargada de los CMAR ante el Departamento de Salud, lo es el Dr. José Ginel Rodríguez.

11. El Dr. Cordero es parte de la facultad de la Escuela de Medicina San Juan Bautista.

12. Toda la facultad de la Escuela de Medicina San Juan Bautista tienen que estar certificadas y forma parte del CMAR, incluyendo al Dr. Cordero.

13. El CMAR tiene un reglamento, pero el mismo no rige cómo la Escuela de Medicina San Juan Bautista escoge a su facultad médica. Ello es una decisión de la institución.

14. El estudiante David Sánchez rotó con el Dr. Cordero durante los meses de febrero, marzo y abril de 2021. El día 30 de marzo de 2021 (fecha de la segunda operación) el referido estudiante estuvo con el Dr. Cordero en el Hospital Menonita Caguas. Los días de 5-8 de abril de 2021 estuvo en *clerical office*, mientras que le [sic] 9 de abril de 2021 estuvo en el *operating room* y de 12-16 de abril de 2025 estuvo en el *clerical office*.

15. El *Student Attendece* es un documento que certifica que el estudiante se encontraba con el médico y que participó de los casos de ese día.

16. La estudiante Lisandra Dominicci rotó con el Dr. Cordero de 17 de agosto al 25 de septiembre de 2020. El 18 de agosto de 2020 (fecha de la primera operación del codemandante Luis Gerardo López García (López García)) la mencionada estudiante no estuvo en el Hospital Menonita de Caguas.

17. Durante las rotaciones clínicas, los estudiantes participan con el cirujano asignado en las rondas diarias a pacientes hospitalizados, como a clínicas externas, así como también a las cirugías programadas.

18. Las aseguradoras no están cobijadas bajo la Ley 136-2006, según enmendada, conocida como la *Ley de Centros Médicos Académicos Regionales de Puerto Rico* (Ley 136-2006), 24 LPRA sec. 10031 *et seq.*[7]

Sin embargo, el foro primario determinó que estaba vedado de disponer sumariamente del caso ante la duda, en cuanto a si algún estudiante de medicina estuvo presente, junto al Doctor Cordero Soto, durante las intervenciones quirúrgicas practicadas al señor López García.

---

[7] Entrada Núm. 81 del caso CG2022CV00916 en el SUMAC, págs. 1-3 (bastardillas en el original).

Insatisfecha, el 30 de octubre de 2025, la parte peticionaria presentó una *Solicitud de Reconsideración*.[8] Específicamente, arguyó que, de las propias determinaciones de hechos incontrovertidos, el TPI reconoció que el estudiante de medicina, David Sánchez, acompañó al médico en las fechas en que se intervino quirúrgicamente con el señor López García, por lo que procedía resolver sumariamente que le aplicaban las disposiciones de la Ley CEMAR al Doctor Cordero Soto. Además, fue a partir de la llegada a la sala de emergencia, que comienzan las imputaciones de negligencia, no previo a la intervención quirúrgica en la que participaron los estudiantes. En la alternativa, solicitó la celebración de una vista evidenciaria para aclarar el propósito de atender de forma sumaria el caso.

El 4 de noviembre de 2025, la parte recurrida interpuso una *Oposición a Mociones de Reconsideración en las Entradas Número 82 y 83 y Solicitando Enmienda a Resolución Interlocutoria*.[9] Particularmente, reiteró que era necesaria la celebración de un juicio en su fondo para determinar la aplicabilidad de los límites estatutarios provistos en la Ley CEMAR. Asimismo, solicitó la enmienda a la determinación de hecho número catorce (14) a los fines de que constara que el estudiante David Sánchez rotó durante los meses de abril y mayo de 2021, y no el 31 de marzo de 2021, de conformidad con los documentos que acompañaron la solicitud de sentencia sumaria.

Ese mismo día, el TPI emitió y notificó una *Resolución Interlocutoria* en la que resolvió reconsiderar la determinación de hecho número catorce (14), según solicitado por la parte recurrida.[10]

Ante ello, la parte peticionaria presentó una *Moción Solicitando Aclaración de Reconsideración Interlocutoria y el que Se*

---

[8] Entrada Núm. 82 del caso CG2022CV00916 en el SUMAC.
[9] Entrada Núm. 86 del caso CG2022CV00916 en el SUMAC.
[10] Entrada Núm. 87 del caso CG2022CV00916 en el SUMAC.

*Nos Permita Replicar a Oposición de la Parte Demandante en la Presente.*[11] Específicamente, solicitó al TPI que aclarara si su dictamen anterior era únicamente a los fines de enmendar la determinación de hecho número catorce (14) y si, a través de la antedicha *Resolución Interlocutoria,* se denegó su solicitud de reconsideración. De igual forma, solicitó la anuencia del foro primaria para replicar el escrito de oposición de la parte recurrida.

Ante ello, el 5 de noviembre de 2025, el TPI emitió y notificó una *Orden* en la que indicó que su resolución tenía el único fin de enmendar su *Resolución* original.[12]

Así las cosas, el 7 de noviembre de 2025, el TPI notificó la *Resolución* enmendada.

Inconforme, el 3 de diciembre de 2025, la parte peticionaria presentó ante nos una *Solicitud de Certiorari* y señala al TPI por la comisión de los siguientes errores:

> Primer error: Erró el TPI al determinar que los hechos en el presente caso no se encuentran cobijados bajo la Ley #139-2006 (Ley CEMAR).

> Segundo error: Erró el TPI en claro abuso de discreción al no conceder una vista evidenciar[i]a ante las continuas solicitudes de la parte compareciente a esos efectos, ya que claramente indicó tener dudas si determinado estudiante rotó con el Dr. Cordero en las fechas implicada en la demanda.

En atención a nuestra *Resolución,* la parte recurrida instó una *Oposición a expedición "auto de certiorari".*

Con el beneficio de la comparecencia de las partes, procederemos a atender el caso de autos.

**II.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos*

---

[11] Entrada Núm. 88 del caso CG2022CV00916 en el SUMAC.
[12] Entrada Núm. 89 del caso CG2022CV00916 en el SUMAC.

*Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). Véase, además, *IG Builders et al v. BBVAPR*, 185 DPR 307, 337 (2012); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Cónsono con lo anterior, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone en lo pertinente lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso. En aras de ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, Regla __ del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), dispone los criterios a considerar para poder atender o no

las controversias ante su consideración. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). Véase, *Rivera et al. v. Arcos Dorados et al., supra*; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Los criterios que debemos considerar son los siguientes:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty, supra*, pág. 97.

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial*

*Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). El mecanismo de sentencia sumaria procede en los casos en los que no existan controversias reales y sustanciales en cuanto a los hechos materiales y reste disponer las controversias de derecho existentes. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). La parte que promueve la moción de sentencia sumaria debe establecer con claridad su derecho y demostrar que no existe controversia real en cuanto a algún hecho material. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). En específico, la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

No obstante, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Con ello, la duda debe ser de tal naturaleza que permita "concluir que existe una *controversia real y sustancial* sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra*, pág. 214.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). El oponente,

no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. JF Montalvo, supra*, pág. 213.; *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.

La Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

Así pues, a Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra*, la parte promovida no podrá descansar en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar detallada y específicamente como lo haya hecho la parte promovente de la moción. De no hacerlo, la citada regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

En esa línea, la Regla 36.5, *supra*, R. 36.5 establece que las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que la persona declarante está cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". *Íd.*

Por otro lado, la Regla 36.6, *supra*, instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, estatuye que, si las declaraciones juradas de la parte que se oponga a la moción resultan que no puede presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. De posponer la consideración, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

Sin embargo, los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos

materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Conforme con esos principios, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Íd.*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles

hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.,* pág. 119.

### C.

El Art. 5 de la Ley CEMAR *supra* sec. 10331, dispone que,

> Los Centros Médicos Académicos Regionales tienen como propósito fortalecer y desarrollar un sistema integrado de salud pública, tanto a nivel primario, secundario, como terciario. Los Centros Médicos Académicos Regionales ofrecerán un ambiente óptimo en el cual se fundirán los propósitos, prioridades, objetivos y la misión reformadora que tiene, tanto el gobierno como las Escuelas de Medicina, de ofrecer y brindar servicios de salud costo efectivos, accesibles y de buena calidad a todas las personas por igual, sin tener en cuenta su raza, sexo, creencias religiosas y políticas.

Así pues, estatutariamente los Centros Médicos Académicos Regionales tienen capacidad para demandar y ser demandados. Art. 6 de la Ley CEMAR *supra* sec. 10034. En esa línea, el Art. 7 de la Ley CEMAR *supra* sec. 10035, estatuye que los Centros Médicos Académicos Regionales se les extenderá la *Ley de Reclamaciones y Demandas contra el Estado*, Ley Núm. 104-1955, 32 LPRA sec. 3077. Con ello, "[a]demás, se extenderá la inmunidad para que no sean acumulados en un pleito ante los tribunales o cualquier foro con competencia, a todos los estudiantes, médicos residentes, médicos en programa de internados y médicos en adiestramiento post graduado y/o en entrenamiento de las instituciones médico-hospitalarias públicas y privadas. Lo aquí dispuesto será un eximente de responsabilidad, a los fines de extender la inmunidad absoluta provista en las acciones por daños y perjuicios por actos de impericia médico-hospitalarias públicas y privadas como parte

de un contrato como médico residente con el Departamento de Salud de Puerto Rico, con la Universidad de Puerto Rico o con un Programa de Educación Médica Graduada acreditado por el "Accreditation Council of Medical Education" (ACGME)".

**III.**

En el caso de marras, la parte peticionaria solicitó la expedición del auto de *certiorari* a los fines de ordenar al TPI que procedía disponer sumariamente la controversia debido a que no existe controversia de hechos. Ello, toda vez que un estudiante acompañó al Doctor Soto Cordero los días en que atendió al señor López García y, por tanto, le es de aplicación la Ley CEMAR.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

Conforme las normas jurídicas pormenorizadas, nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. En primer lugar, nos corresponde evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria. Luego de evaluar la *Moción de Sentencia Sumaria Solicitando Aplicación de la Ley 136-2006 Centros Médicos Académicos Regionales (CEMAR),* concluimos que esta cumplió con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3. En dicha solicitud, la parte peticionaria enumeró varias determinaciones de hechos que a su juicio no había controversia sobre ellos. En aras de respaldar los hechos incontrovertidos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, en la *Oposición a Mociones de Sentencia Sumaria en las Entradas Número 75 y 76,* la parte recurrida cumplió con los requisitos de forma dispuestos en la citada regla. Ello, pues

la parte recurrida enumeró los hechos en los que razonaba existía controversia de hechos y los hechos incontrovertidos.

Ahora nos corresponde determinar si existen hechos en controversia que imposibilitan la disposición sumaria del caso. Tras un examen cuidadoso del expediente y las mociones de sentencia sumaria y oposición, así como los documentos incluidos en las mociones de sentencia sumaria, concluimos que no existen hechos materiales en controversia. El foro primario debió acoger, para disponer sumariamente del caso, como hecho incontrovertido que el estudiante David Sánchez estuvo presente durante las intervenciones que tuvo el Doctor Soto Cordero con el señor López García. Particularmente, el TPI concluyó, como parte de sus determinaciones de hechos que, en las fechas en controversia del caso ante nos, el estudiante David Sánchez estuvo bajo la supervisión del Doctor Soto Cordero, cuando dicho galeno brindó servicios médicos al señor López García. Destacamos que, en la determinación de hecho número catorce (14) y quince (15) el foro primario razonó que, el estudiante David Sánchez estuvo presente los días en que el Doctor Soto Cordero atendió al señor López Soto. Ante ello, dichos hechos facultaban al *foro a quo* en conceder la moción de sentencia sumaria en virtud de que no habían hechos en controversia. Por último, nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho aplicable al caso de autos.

La moción de sentencia sumaria promueve la rápida solución y adjudicación de las controversias. La parte promovente debe enumerar en la moción los hechos en los que no exista controversias de hechos. Como hemos esbozado, dichas determinaciones deben estar acompañadas de documentos que sostengan los hechos que no existe controversia.

En lo pertinente a la controversia, el Art. 7 de la Ley CEMAR, *supra,* establece que los médicos residentes, médicos en programas

de internados, médicos en adiestramiento post grado y en entrenamientos de las instituciones médico-hospitalarias públicas y privadas tienen inmunidad absoluta en las acciones por daños y perjuicios por actos de impericia médico-hospitalarias públicas y privadas. No obstante, los galenos deben formar parte de Departamento de Salud de Puerto Rico, con la Universidad de Puerto Rico o con un Programa de Educación Médica Graduada acreditado por el "Accreditation Council of Medical Education" (ACGME).

Tras un análisis detallado sobre los planteamientos que la parte peticionaria presentó ante esta Curia, concluimos que el TPI incurrió en error de derecho al declarar No Ha Lugar la *Moción de Sentencia Sumaria Solicitando Aplicación de la Ley 136-2006 Centros Médicos Académicos Regionales (CEMAR)* instada por la parte peticionaria por lo que amerita nuestra intervención. Tal como surge del expediente, la institución universitaria en la que la parte peticionaria brindaba servicios médicos está cobijada por la Ley CEMAR. No hay controversia de que el Dr. Cordero Soto le aplican los límites de acciones contra el Estado, que estatuye la Ley CEMAR. Esto es así, toda vez que quedó evidenciado que en efecto hay estudiantes de medicina participando de las rotaciones. Consecuentemente, el *foro a quo* erró en no aplicarle a la parte peticionaria el citado estatuto.

En segundo lugar, el foro primario no cumplió con la normativa aplicable a la disposición de mociones de sentencia sumaria puesto que resulta innecesario realizar una vista para probar que un estudiante rotó en esta fecha para aplicarle los límites de acciones contra el Estado. Ello, puesto que surge palmariamente que, el Doctor Cordero estuvo acompañado de un estudiante de medicina el día en que operó y atendió al señor López Soto. Así pues, no basó sus determinaciones de hechos en la documentación ante su consideración conforme las Reglas de Procedimiento Civil, *supra*,

y la jurisprudencia. Ciertamente, el *foro a quo* debió conceder la disposición sumaria del caso, en cuanto al Doctor Cordero Soto debido a que le es de aplicación la Ley CEMAR.[13] A esos fines, se desprende de la prueba anejada en la moción de sentencia sumaria que, el Doctor Cordero Soto estuvo supervisando al estudiante David Sánchez los días en que el señor López Soto acudió a las facilidades médicas. Además, atisbamos que, cuando no hay la mínima duda, el TPI debe disponer sumariamente de un caso, tal como lo debió haber realizado en el caso de autos.

A la luz de los fundamentos esbozados, el foro primario debió disponer sumariamente del caso con respecto al Doctor Cordero Soto dado que no hay controversia en que el estudiante David Sánchez estaba con el Doctor Cordero Soto los días en que le brindó servicios médicos al señor López García y, por tanto, le es aplicable la Ley CEMAR.

## IV.

Por los fundamentos que anteceden, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida.

**Notifíquese inmediatamente.**

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Juez Boria Vizcarrondo, la Juez Rivera Marchand y la Juez Mateu Meléndez concurren sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[13] *Véase* el Art. 7 de la Ley CEMAR, 24 LPRA sec. 10035.